UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: _____ | |
| DATE FILED:___  9/19/2013 | |

Edward BOWMAN,

                                **Petitioner,**

              -against-

Steven RACETTE,

                       **Respondent.**

-----------------------------------------------------------------X

**12-CV-04153 (LTS)(SN)**

<u>**REPORT AND
RECOMMENDATION**</u>

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE LAURA TAYLOR SWAIN:**

      Edward Bowman has filed this *pro se* petition for a writ of *habeas corpus*, pursuant to 28

U.S.C. § 2254, seeking to vacate his judgment of conviction. On August 3, 2006, after a jury trial

in New York State Supreme Court, New York County, Bowman was convicted of Assault in the

First Degree, Attempted Robbery in the First Degree, Attempted Robbery in the Second Degree,

and Conspiracy in the Fourth Degree. He was sentenced, as a persistent violent felony offender,

to an aggregate prison term of 20 years to life.

      In his *habeas* petition, Bowman raises eight grounds of relief: he argues that (1) his trial

counsel was ineffective for failing to: (a) object to certain jurors; (b) move to dismiss the

indictment; (c) object to inadmissible facts; and (d) move for a missing witness charge; (2) the

court admitted hearsay statements during the pretrial suppression hearing that violated his

constitutional rights; (3) the court erred in instructing the potential jurors that they could make

"no inference" should Bowman not testify; (4) the prosecutor committed misconduct when he (a)

elicited testimony in violation of the Confrontation Clause; (b) elicited false testimony; (c)

revealed to the jury that Bowman had a criminal record; (d) provided evidence of Bowman's

debts; and (e) bolstered the credibility of his witnesses; (5) the evidence was legally insufficient

to support the conviction; (6) the trial court erred in not disqualifying jurors who had a

relationship to the victim; (7) the court improperly permitted Bowman's trial to be severed from

that of his co-defendant; and (8) the court erred in not admitting Bowman's prior testimony in its

entirety.

For the reasons that follow, Bowman's *habeas* petition on grounds one through seven

should be DENIED. Because the issue raised in ground eight – that the trial court erred in not

allowing Bowman to admit additional portions of his first trial testimony – may have resulted in

a violation of Bowman's constitutional right to a fair trial, I am appointing *habeas* counsel from

the Court's Criminal Justice Act ("CJA") panel to brief this issue. See 18 U.S.C. §

3006A(a)(2)(B). Accordingly, I am staying the time to object to this Report and

Recommendation on grounds one through seven until I issue a supplemental Report and

Recommendation on ground eight.

## BACKGROUND

### I.     Factual Background

#### A.  The Attempted Robbery

Bowman's conviction stemmed from a series of events that took place in the evening of

August 26, 2003. He was convicted on May 19, 2006, after three trials and two hung juries. The

facts of the government's case, as established at trial, are as follows.

Two individuals, Stacy Liggan and Roland Roberts, planned to rob an illegal gambling

establishment at the corner of 154th Street between Eighth and Bradhurst Avenues. On the

evening of August 26, 2003, after unsuccessful attempts to involve Joseph Verona and Desmond

Deal in the plan, they recruited Jason Rivera, a younger friend of Roland Roberts's and Verona's

cousin, to help them. That night, Rivera and Roberts met Bowman, a livery cab driver and

Liggan's cousin, while he was working on his car; soon Liggan approached them too. They discussed the respective roles in the plan and got in the car. They were equipped with bullet-proof vests, dark hooded sweatshirts and three guns. Rivera held a knife.

Bowman drove them from 172nd and Fulton Avenue to the scene of the crime at 154th Street between Eighth and Bradhurst Avenues.  Roberts exited the car and, dressed in a hooded sweatshirt on a hot evening, caught the attention of undercover policeman Kenneth Girven, a Commanding Officer of the Manhattan North Anticrime Unit. Roberts hid behind a black SUV, until Girven said, "Police. Can you step out from behind the car, so I can talk to you for a minute?" (Tr: 55.) Girven observed Roberts and Liggan making eye contact. Shortly thereafter, Roberts jumped out from behind the SUV and fired four or five shots at Girven, hitting Girven once in the abdomen. Liggan and Roberts ran towards Bradhurst Avenue and jumped into Bowman's car. Rivera fled on foot. As Girven lay on the ground, he observed a white "four-door larger American type car" driving northbound in reverse on Bradhurst Avenue. He saw individuals inside the car looking in his direction. The car then continued south. (Tr: 148.)

Bowman's version of events, which he consistently presented at each trial, differs. He maintained that he was working the night of August 26, 2003, and was on his way to the taxi base to meet one of his drivers to provide a car. He passed his cousin, Stacy Liggan, on Fulton Avenue. Liggan flagged him down and asked for a ride. Bowman refused, but eventually relented because he was family. He said that Liggan paid him $12 and that he was unaware of the purpose of the ride. As they rode to 154th Street, the three individuals were in the back seat and Bowman did not overhear discussion of the robbery plans. He dropped the three men off on 154th near Bradhurst Avenue. Liggan asked him to come back to get them but Bowman refused. Before he had driven off, however, he heard shots and saw people running. He saw Liggan

running towards the car waving his hand. Bowman stopped the car and Liggan and Roberts jumped in; Rivera ran away.

### B. Police Investigation

After pursuing a false lead, on September 2, 2003, the police spoke with a civilian at the 32nd precinct about the shooting. The civilian provided information that allowed the police to look for Roberts, Rivera, Liggan, and an unidentified man with the nickname "Fu," which is Bowman's nickname.

On September 6, 2003, Roberts was arrested and his PDA seized. This provided a record of a series of text messages and phone calls between Liggan, Bowman, and others. Once the police determined that Bowman's nickname was "Fu," they learned he was affiliated with three white livery cabs (the police already had information that a white livery car was seen leaving the scene). Roberts had provided information that a cab driver named "Fu" had driven them to 154th Street. Roberts did not know Fu's real name or what kind of car he drove.

On September 16, 2003, Bowman was issued a citation for urinating in public and taken to the 32nd Precinct. He was detained for about twelve hours. Around this time, his vehicles were also seized and held for about a month. While detained, Bowman spoke with Detective Hanna. There is no record of the content of this interrogation, but Detective Hanna testified that Bowman denied being at the scene of the August 26, 2003 incident. Bowman had no lawyer present and no arrest was made at that time.

On October 16, 2003, Bowman was interviewed by the police in the presence of his lawyer pursuant to a proffer agreement, commonly called a "Queen for a Day." At this meeting, he denied being present at the scene or driving a white cab at the time. He said he had a suspended license and that he allowed other people to operate his cabs. He admitted that Liggan

4

was his cousin, but denied knowing Roberts or Rivera. After speaking privately with his lawyer, he admitted he did drive occasionally, but denied driving on August 26th or 27th.

In January 2004, Jason Rivera signed a cooperation agreement with the District Attorney's Office. He pled guilty to first-degree assault and second-degree robbery in connection with the case. If he met all the terms of the agreement, the prosecutor would recommend a five year sentence. On February 26, 2004, a New York County grand jury charged Bowman, Stacy Liggan, and Roland Roberts with Assault in the First and Second Degrees, Criminal Possession of a Weapon in the Second and Third Degrees, and Conspiracy in the Fourth Degree. Roberts was tried separately; Bowman and Liggan were tried jointly.

### C. Bowman's Trials

Bowman and Liggan's joint trial began on January 13, 2005. Bowman testified to his version of the story: that he was present but was unaware of what his cousin was planning with the other two individuals. The jury was unable to reach a verdict on any of the charges against Bowman, and convicted Liggan of third-degree weapon possession. The cases were then severed for the re-trials.

Bowman was retried and, on July 14, 2005, the jury was again unable to reach a verdict on any of the charges.

On May 8, 2006, Bowman's third trial began. The Government presented thirty-seven witnesses and the defense called four. Bowman did not testify. On May 19, 2006, Bowman was convicted of attempted first-degree robbery, attempted second-degree robbery, first-degree assault, and fourth-degree conspiracy. The jury acquitted Bowman of criminal possession of a weapon.

**D. Direct Appeal**

Bowman, through counsel, appealed his case in the Appellate Division, First Department. Through his counsel, he asserted four grounds of appeal: (1) the evidence was legally insufficient to support the conviction; (2) verdict was against the weight of the evidence; (3) he was denied a fair trial based on the admission of his immunized statement to the District Attorney's Office and by the court allowing Captain Girven to be recalled to testify; and (4) the sentence was harsh and excessive.

In a supplemental *pro se* brief, Bowman asserted 22 grounds of appeal: (1) the trial court failed to dismiss seated jurors based on their suspected relationship to the victim; (2) the prospective jury pool was tainted; (3) the prosecutor's grand jury instructions were erroneous and counsel was ineffective for failing to object; (4) Bowman's confrontation rights were violated when the prosecutor elicited hearsay statements; (5) the court erred in allowing two detectives to testify regarding a conversation with an unknown civilian witness; (6) the prosecutor permitted two detectives to testify falsely; (7) the trial court erred in not granting a trial order of dismissal motion; (8) the prosecutor committed misconduct by referring to Bowman's criminal record on summation; (9) the court erred in permitting the prosecutor to introduce Bowman's immunized statements; (10) the trial court erred in granting the severance motion; (11) the court erred in giving a "no inference charge" to a pool of potential jurors; (12) the court's accomplice liability charge was erroneous and trial counsel was ineffective for failing to object; (13) the court erred in referring to the presumption of innocence charge as non-guilt, thus diluting the standard; (14) the court's jury charge was erroneous; (15) the court's corroboration charge was erroneous; (16) the prosecutor bolstered the credibility of the Government's witnesses; (17) the court improperly admitted evidence of uncharged crimes; (18)

counsel was ineffective for failing to request a missing witness charge; (19) counsel was ineffective for failing to object to hearsay testimony; (20) the court erred in permitting testimony of a Human Resources Administration representative and other witnesses regarding Bowman's financial state; (21) counsel was ineffective because he was unprepared for trial; and (22) the prosecutor committed reversible error by telling the jury that Bowman lied to the police.

On October 26, 2010**,** the Appellate Division unanimously affirmed Bowman's conviction.  On November 9, 2010, Bowman submitted a *pro se* leave application in the New York Court of Appeals and a follow-up letter on December 13, 2010. On December 15, 2010, Bowman's counsel submitted a leave application. The leave application was denied on March 7, 2011. On May 27, 2011, Bowman sought a writ of *certiorari* from the United States Supreme Court, which was denied on October 3, 2011.

**DISCUSSION**

I.     **Timeliness**

It is uncontested that Bowman's *habeas corpus* petition is timely. A petition must be filed in federal court within one year of the date on which a petitioner's state court conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The limitations period begins to run upon completion of direct appellate review in the state court system and "either the completion of certiorari proceedings in the United States Supreme Court or . . . the time to seek direct review via certiorari has expired." Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001). The New York Court of Appeals denied leave to appeal on March 7, 2011. (Ex. G.) Bowman sought a writ of *certiorari* from the Supreme Court, which was denied on October 3, 2011. Bowman had one year from that date to file his petition. Because he filed his petition on May 17, 2012, it is timely.

## II.      Exhaustion

### A.  Statement of Law

Before a federal court may review a petition for a writ of *habeas corpus*, a petitioner

must exhaust his remedies in state court. To exhaust a claim, a petitioner must "invoke[] one

complete round of the State's established appellate review process" before bringing the same

claim in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The "complete round"

includes direct appeals as well as discretionary review. 28 U.S.C. § 2254(c) ("An applicant shall

not be deemed to have exhausted the remedies available in the courts of the State . . . if he has

the right under the law of the State to raise, by any available procedure, the question

presented."); Baldwin v. Reese, 541 U.S. 27, 31 (2004). This "exhaustion requirement" is rooted

in a "policy of federal-state comity," Picard v. Connor, 404 U.S. 270, 275 (1971), "protect[s] the

state courts' role in the enforcement of federal law[,] and prevent[s] disruption of state judicial

proceedings," Rose v. Lundy, 455 U.S. 509, 518 (1982). It ensures that state courts are given "a

full and fair opportunity to resolve federal constitutional claims" before the claims are presented

to federal courts. O'Sullivan, 526 U.S. at 845; Duncan v. Henry, 513 U.S. 364, 365-66 (1995).

To "properly exhaust a claim," a petitioner must "fairly present" his claim in the highest

court of the state. "The state court must be fairly apprised that petitioner is raising a federal

constitutional claim and of the factual and legal premises underlying the claim." Grey v. Hoke,

933 F.2d 117, 119 (2d Cir. 1991). This notice requirement is rigorous: the appellant-petitioner

must request relief on each point that he seeks to bring to the highest court's attention. In New

York, where an appellant submits a letter to the Court of Appeals raising certain issues *and*

attaches an Appellate Division brief raising additional claims, those additional claims not

discussed in the letter are deemed abandoned and therefore not presented to the Court of

Appeals. Grey, 933 F.2d at 120. On the other hand, if an appellant does not raise specific grounds of appeal to the Court of Appeals in a letter and simply attaches the Appellate Division brief, he is deemed to have presented all claims raised in the brief to the Court of Appeals for exhaustion purposes. Galdamez v. Keane, 394 F.3d 68, 75-78 (2d Cir.), cert denied 544 U.S. 1025 (2005).

### B. Bowman's Claims on *Habeas* Review

#### 1. Exhausted Claims

It is undisputed that six of Bowman's claims are exhausted. These are that: (1) his trial counsel was ineffective for failing to: (a) object to certain jurors; (b) move to dismiss the indictment; (c) object to inadmissible facts; and (d) move for a missing witness charge; (2) the court admitted hearsay statements during the pretrial suppression hearing that violated his constitutional rights; (3) the court erred in instructing the potential jurors that they could make "no inference" should petitioner not testify; (4) the prosecutor committed misconduct when he (a) elicited testimony in violation of the Confrontation Clause, and (b) revealed to the jury that Bowman had a criminal record; (5) the evidence was legally insufficient to support the conviction; (6) the court erred in not admitting petitioner's prior testimony in its entirety.

Each of these claims was raised in Bowman's Appellate Division briefs, either by his appellate counsel or in his *pro se* supplemental brief. They were also raised in the leave application to the Court of Appeals. They are therefore exhausted.

#### 2. Unexhausted Claims

Four of Bowman's claims – alleging juror bias, improper severance, improper bolstering, and the prosecutor's elicitation of false testimony and evidence of his debt – are not exhausted.

Bowman did not properly raise them in his leave application to the New York Court of Appeals, and therefore he did not invoke one complete round of appeal.

In Bowman's Appellate Division brief, he claimed that he was denied his right to a fair trial because the jury pool was biased in favor of the Government – 34 out of 70 of the prospective jurors had an intimate relationship to law enforcement. In addition, he claimed his trial counsel was ineffective for failing to dismiss seated jurors due to their relationship with law enforcement or law enforcement personnel. He argued that the trial judge abused his discretion by granting a severance of co-defendant's trial without an "irreconcilable conflict in defenses" as is mandated by the New York Criminal Procedure Law ("C.P.L.") § 200.40. He also claimed that the Assistant District Attorney improperly bolstered the integrity of a witness in his summation, and provided several examples of instances in which the prosecution elicited testimony Bowman claims is false.

Although these claims were raised to the Appellate Division through Bowman's *pro se* supplemental brief, he did not articulate these arguments in his leave application to the Court of Appeals. After raising seven other grounds of appeal in detail over 30 pages, he wrote, "appellant cites the additional points raised in Appellate Counsel['s]. . . brief . . .  and Mr. Bowman['s] Pro Se Supplemental Brief Points 1-29 on the grounds of ineffective assistance of counsel for failure to object to issues raised in [that brief] . . . ." (*Pro Se* Leave Application, Ex. E at 27.) In his Traverse, Bowman argues that this constitutes fair presentment of the juror bias claim and the ineffective assistance claim for not striking such jurors, as well as of the severance and improper bolstering claims.

The requirements for fair presentment of a claim are rigorous and exacting. If a petitioner argues a single claim at length in a leave application without clearly stating that he raises the

additional claims in an attached brief, the additional claims are not fairly presented. Jordan v. Lefevre, 206 F.3d 196, 198 (2d Cir. 2000). In Jordan, the petitioner forcefully argued a Batson claim in a leave application. The final paragraph of the letter requesting permission to appeal stated, "[f]or all these reasons and the reasons set forth in [the] Appellate Division briefs." Id. The Court of Appeals found that the additional grounds were unexhausted because the petitioner could not rely on the state court to "comb through" the briefs to "seek and find arguments not expressly pointed out" in the leave application. Id. at 199; see also Grey, 933 F.2d at 120; Wright v. Poole, 02 Civ. 8669 (KMK)(MDF), 2012 WL 4478393, at * 5 (S.D.N.Y. Sept. 28, 2012) (finding the petitioner directed the Court of Appeals' attention away from the additional claims in the attached pro se brief by stating that his "case presents the following issues that warrant consideration" and then failing to mention any of the claims in the brief).

Courts have narrowed the application of Grey and Jordan where it is "by no means obvious" that a petitioner seeks to argue only certain points in a leave application. Melendez v. Scully, 91 Civ. 2497 (RR), 1993 WL 41769, at *4 (E.D.N.Y. Feb. 10, 1993). In such cases, courts should "prefer[ to] review[] habeas petitions on the merits when such review would not offend principles of comity and federalism." Morales v. Miller, 41 F. Supp. 2d 364, 375 (E.D.N.Y. 1999). Where a petitioner does not specify particular claims in a leave application, but simply encloses a copy of the Appellate Division briefs, a petitioner has not "affirmatively directed the Court of Appeal's [sic] attention away from claims" in the Appellate Division briefs, and that the "fair import" of the application plainly requests review of all issues brought before the Appellate Division. Galdamez, 394 F.3d at 76 (emphasis in original) (citing Grey, 933 F.2d at 120).

Thus, the fact that Bowman specified seven grounds of appeal in his leave application and then attached his Appellate Division brief does not, in itself, render the claims unexhausted. See Galdamez, 394 F.3d at 76. But this Court cannot say that the "fair import" of Bowman's leave application is to incorporate all 29 claims in the attached briefs.

Bowman's message is opaque: while Bowman references "Points 1-29," he qualifies this by saying that he wishes to focus the court's attention on the ineffective assistance of counsel claims. Indeed, the fair import of the request is that he wishes to incorporate *only* those claims that involve ineffective assistance, requiring the Court of Appeals to "comb through" the briefs to find these claims among the 29. Jordan, 206 F.3d at 198. In that way, his statement lacks the specificity required by courts that examine similar situations. See, e.g., Gajadhar v. Ercole, 09 Civ. 1964 (LBS), 2010 WL 3036498, at *3 (S.D.N.Y. Aug. 4, 2010) (finding claims exhausted when a leave application argued one issue at length, then included a footnote that incorporated by reference the *pro se* supplemental brief, and identified each claim he wished to incorporate). The multiplicity of claims – his 29 grounds of appeal to the Appellate Division span 160 pages – further convinces the Court that this situation required more, rather than less, specificity. Cf. Anderson v. Goord, 03 Civ. 0905 (PKC), 2005 WL 2298157, at *2-3 (S.D.N.Y. Sept. 20, 2005) (finding that, where petitioner raises only one claim that is potentially reviewable by the Appellate Division and the Court of Appeals, the "simplicity of the documents suffices to clearly inform the Court of Appeals that the issue raised in the brief was also the basis for the application for granting leave").

Accordingly, Bowman's juror bias, improper severance, improper bolstering, and the prosecutor's elicitation of false testimony claims are unexhausted.

**C. Procedural Default**

A federal court "need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred" due to a state procedural rule. Harris v. Reed, 489 U.S. 255, 263 n.9 (1989). This is because it "would be inconsistent with [§ 2254(b)], as well as with underlying principles of comity" to require a petitioner to exhaust a claim in state court if the results of further review are "predetermined." Castille v. Peoples, 489 U.S. 346, 350 (1989).

In such a case, a petitioner no longer has "remedies available in the courts of the state" within the meaning of § 2254(b). Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982). Accordingly, where a petitioner cannot resort to state court to present a constitutional claim, a federal court will deem the claim exhausted but procedurally defaulted. Grey, 933 F.2d at 120-21; Hayward v. Brown, 09 Civ. 6495 (LAK)(AJP), 2010 WL 2629037, at *26 (S.D.N.Y. July 1, 2010).

Here, New York procedural rules bar Bowman from now raising the four unexhausted claims in the state appellate process. He cannot again seek leave to appeal his conviction because he already filed the one application for leave to appeal to the Court of Appeals to which he is entitled. C.P.L. § 450.10(1) (preserving one appeal as of right from a criminal conviction); 22 N.Y.C.R.R. §§ 600.8(d)(1), 500.9 et seq. (an application for a certificate granting leave to appeal a criminal case shall be made within 30 days after service of judgment on applicant). Second, while New York State law provides for collateral review of a conviction under C.P.L. § 440.10, such review is not available if the claim could have been raised or was actually decided on direct review. See C.P.L. § 440.10(2)(a), (c). Here, the Appellate Division reviewed Bowman's juror bias, improper severance, and improper bolstering claims on direct review, so those claims

cannot be brought again in a § 440.10 motion. Because additional state collateral review is unavailable, the Court will deem these claims exhausted but procedurally defaulted.

A petitioner's procedurally defaulted claim may not be reviewed on *habeas* review unless petitioner (1) provides cause for the default and shows that actual prejudice will result from barring the claim, or (2) demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice" because he is actually innocent. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Cause can be established by showing that "some objective factor external to the defense impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule." Id. at 753; Murray v. Carrier, 477 U.S. 478, 488 (1986) (external factors may include (1) a showing that the defendant's counsel was ineffective; (2) a showing that the factual or legal basis for a claim was not reasonably available at the time of default; or (3) interference by state officials that made compliance with the procedural mechanism impracticable). To establish actual innocence, a "petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley v. U.S., 523 U.S. 614, 623-24 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)). A petitioner must "support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).

In his *habeas* petition, Bowman does not submit any explanation of cause for his failure to raise properly the unexhausted claims. Rather, in his Traverse, he instead insists that they were properly raised. Nor does he explain how he was prejudiced from these alleged errors. Therefore, the first ground under Coleman is unavailable to him.

Nor can Bowman show that a fundamental miscarriage of justice would occur should this Court deny review of these claims. Review on this ground is reserved for instances "'where a

constitutional violation has probably resulted in the conviction of one who is actually innocent.'"
Washington v. James, 996 F.2d 1442, 1447 (2d Cir. 1993) (quoting Murray, 477 U.S. at
496). Bowman has not submitted any new evidence to this Court that would support an actual
innocence claim, nor does he assert actual innocence as a basis for review. Therefore, this outlet
is not available to him.

Accordingly, Bowman has not (1) shown cause for failing to raise these claims to the
highest state court, or (2) demonstrated that failure to consider the claim will result in a
"fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Therefore, Bowman has not
overcome the procedural default doctrine, and this Court is not compelled to review these
unexhausted claims on the merits.

### D. Merits Review in the Court's Discretion

A federal court can address an unexhausted claim on the merits if it is "plainly meritless."
28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the
merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts
of the State"); Rhines v. Weber, 544 U.S. 269, 277 (2005); Rolling v. Fischer, 433 F. Supp. 2d
336, 349 (S.D.N.Y. 2006) (a court may deny claims without regard to the lack of exhaustion
because they fail on the merits); Morris v. Reynolds, 48 F. Supp. 2d 379, 384 n.8 (S.D.N.Y.
1999) ("[W]here the issue of whether the claim is exhausted is somewhat questionable, but the
lack of merit of the claim is easily shown, it may be more appropriate for the Court to reach the
merits.")

Even though it is unexhausted and procedurally defaulted, this Court will review
Bowman's claim that the prosecutor elicited false testimony because it is plainly meritless. A
review of the record plainly shows that there was no error, as Bowman claims. Thus, the multiple

concerns on *habeas* review—namely judicial economy, deference to state courts' legal rulings, and finality for the petitioner—tip in favor of this Court explaining to Bowman why these claims do not survive *habeas* review.

With respect to the other three unexhausted claims, even if there were error at the state court level, the Court is confident that no prejudice sufficient to meet a petitioner's burden on *habeas* review resulted from them. Therefore, the Court declines to review these unexhausted claims.

## III.    Standard of Review

The statutory authority of federal courts to grant *habeas corpus* relief for persons in state custody is provided by 28 U.S.C. § 2254. As amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), § 2254(d) limits the grounds on which a federal court may grant a *habeas* petition. If an application includes a claim that has been adjudicated on the merits in state court proceedings – that is, the petitioner has met the exhaustion requirement – that application:

> shall not be granted with respect to any claim . . . unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA standard is "highly deferential" to state court rulings. <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002). This deference is required even when the state court renders a decision without an explanation. <u>Harrington v. Richter</u>, 562 U.S. __, 131 S. Ct. 770, 784 (2011). Thus, where a state court's decision summarily rejects a claim on the merits but without explanation, the federal court must review "whether the state court's ultimate decision was an 'unreasonable

application' of clearly established Supreme Court precedent." Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001); Aeid v. Bennett, 296 F.3d 58, 62 (2d Cir. 2002).

## IV.   Merits Review

### A.   Ineffective Assistance of Trial Counsel

Bowman argues that he received ineffective assistance of counsel, in violation of his Sixth Amendment rights. He argues that his trial was ineffective for failing to: (1) move to dismiss the indictment, (2) move for a missing witness charge; (3) object to hearsay and false testimony; and (4) object to the court's no inference charge.  The Court finds that *habeas* relief is not warranted on these grounds.

#### 1.   Procedural Posture

Bowman brought these claims on direct appeal and did not raise them in a collateral proceeding. The Government argued that the claims were unreviewable by the Appellate Division because they were not raised before the trial court and therefore were unpreserved for appeal. The Government further argued that Bowman committed a procedural error by raising his ineffective assistance of counsel claims on direct review instead of in a collateral proceeding before the trial court. The Appellate Division summarily rejected these claims when it affirmed Bowman's conviction, so this Court does not have a state opinion to review for Bowman's ineffective assistance of counsel claims. Nevertheless, for the reasons that follow, this Court decides that these claims are subject to federal merits review.

Generally, if a petitioner fails to comply with a state procedural rule when he presented his federal claim to the state courts, a federal court may not review the claim because the state appellate court's decision rests on an "adequate and independent state ground." Harris, 489 U.S. at 260, 264 n.10 ("[T]he adequate and independent state ground doctrine requires the federal

court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."). But a federal court is barred from conducting *habeas* review only if the state court "actually . . . relied on the procedural bar as an independent basis for its disposition . . . ." Caldwell v. Mississippi, 472 U.S. 320, 327 (1985); Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993) (the Harris presumption does not apply to summary denials without opinion "unless there is 'good reason to question whether there is an independent and adequate state ground for the decision'") (quoting Coleman, 501 U.S. at 739).

Here, although Bowman raised each of these claims in his *pro se* supplemental brief to the Appellate Division, that court did not include analysis of these claims in its decision. As such, this Court cannot say whether the summary denial of the claim was a result of a procedural rule or an evaluation on the merits. See Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 (2d Cir. 2000) ("[W]e explicitly hold that when a state court uses language such as '[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review.") Because Bowman fulfilled his responsibilities by raising his claims before the Appellate Division and the Court of Appeals, it would "be out of harmony with . . . the rules of fundamental justice" to bar federal review of these claims here. U.S. v. Olano, 507 U.S. 725, 732 (1993); see also Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) ("State procedural rules that bar habeas review of ineffective assistance claims are viewed 'with a healthy degree of skepticism.'") (quoting Smallwood v. Gibson, 191 F.3d 1257, 1268 (10th Cir. 1999)).

In addition, while the Government asserts that these ineffective assistance claims are unreviewable here – implying, the Court assumes, that they should have been first raised on a C.P.L. § 440.10 motion – it is well-settled that, in New York, an ineffective assistance of counsel

claim may be raised on direct appeal also. People v. Lane, 457 N.E.2d 769 (N.Y. 1983); see also People v. Lewis, 809 N.E.2d 1106, 1108 n.2 (N.Y. 2004) (where failure to object is the basis for a claim of ineffective assistance of counsel that claim by its very nature will ordinarily be made for the first time on appeal). Indeed, the notion that an ineffective assistance of counsel claim is best suited for a collateral proceeding is not absolute. Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003).

Accordingly, this Court finds Bowman's ineffective assistance of counsel claims reviewable on the merits.

### 2. **Strickland Analysis**

Bowman's claims that his counsel was ineffective for failing to dismiss the indictment and request a missing witness charge are addressed below in the context of an ineffective assistance of counsel claim. Because Bowman's other two grounds for ineffective assistance – that Bowman's counsel failed to object to hearsay and false testimony, and failed to object to the court's no inference charge – are also raised on the merits as a ground for *habeas* relief, they are addressed *infra*, outside of the context of an ineffective assistance of counsel claim.

For the purposes of *habeas* review, Strickland v. Washington, 466 U.S. 668 (1984), is the relevant "clearly established federal law" in an ineffective assistance of counsel claim. 28 U.S.C. § 2254(d)(1); Harrington, 131 S. Ct. at 785; Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006). A petitioner is not, however, required to show that the particular theory of ineffective assistance of counsel is also "clearly established." Aparicio v. Artuz, 269 F.3d 78, 95 n.8 (2d Cir. 2001).

Evaluation of an ineffective assistance claim on *habeas* review is rooted in the two-pronged test articulated in Strickland. See also Harrington, 131 S. Ct. at 787 (in a *habeas* petition based on ineffective assistance of counsel, the federal court reviews whether state court decision

involved an "unreasonable application" of Strickland). The first prong considers whether counsel's performance was objectively unreasonable, instructing that any errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Thus, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." Strickland, 466 U.S. at 690; Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) ("[a]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance") (citations and quotations omitted); Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (there is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect"); Michel v. Louisiana, 350 U.S. 91, 101 (1955) (when reviewing a *habeas* petitioner's claim of ineffective assistance, counsel's conduct is presumptively "sound trial strategy"). The petitioner has the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

Under the second prong, the petitioner must establish prejudice, which means showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S. Ct. at 787-88 (quoting Strickland, 446 U.S. at 693, 687). Both prongs are necessary to meeting the petitioner's burden. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

"Surmounting Strickland's high bar is never an easy task." Harrington, 131 S. Ct. at 788 (citation omitted). Rigorous and "highly deferential," Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001), the Strickland standard seeks to avoid the lessons of hindsight, Strickland, 466 U.S. at 689. Analysis of an ineffective assistance claim focuses on the fundamental fairness of the trial and asks whether a breakdown of the adversarial process occurred, rendering the result "unreliable." Strickland, 466 U.S. at 696.

A petitioner who brings a *habeas* claim based on ineffective assistance of counsel has a higher burden than a defendant on direct appeal raising those same claims. Harrington, 131 S. Ct. at 785. "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Id; Sellan, 261 F.3d at 315 (an objectively unreasonable application involves "[s]ome increment of incorrectness beyond error") (internal quotation marks omitted). Indeed, "[f]ederal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 131 S. Ct. at 788; see Knowles v. Mirzayance, 556 U.S. 111, 123-24 (2009) (when the "highly deferential" standards created by Strickland and § 2254(d) are applied in tandem, the review is "doubly" deferential). Under this highly deferential standard, federal *habeas* relief is precluded if "fairminded jurists could disagree" on the correctness of the state court's decision. Harrington, 131 S. Ct. at 786.

### (a) Failure to Move to Dismiss the Indictment

Bowman claims that his trial counsel was ineffective for failing to move to dismiss the indictment based on an erroneous grand jury instruction provided by the Assistant District Attorney ("ADA").

The ADA instructed the grand jury that, "if they found the defendant had acted with others to commit either robbery in the first-degree, robbery in the second-degree, or conspiracy in the fourth-degree, those were the underlying felonies" for first-degree assault. (Tr: 1053.) Based on this instruction and others, the grand jury issued the indictment. At the third trial, the ADA requested that the petit jury be instructed similarly. Bowman argues, and the trial judge agreed, that such a charge violated the principle articulated in People v. McGee, 399 N.E.2d 1177 (N.Y. 1979): liability for a substantive offense, here first degree assault, may not be independently predicated upon a defendant's participation in an underlying conspiracy since "[t]o permit mere guilt of conspiracy to establish the defendant's guilt of the substantive crime without any evidence of further action on the part of the defendant, would be to expand the basis of accomplice liability . . . ." Id. at 1181. Bowman requested that trial counsel move to dismiss the indictment but he claims his counsel "took no action." (Pro Se Supplemental Brief, Ex. B at 15.) He argues that his trial counsel's failure to move "so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict suspect." (Pet. at 23.)

As an initial matter, Bowman's claim of ineffective assistance of counsel on this ground is directed towards his trial counsel at his third trial. But a motion to dismiss the indictment is a pre-trial motion that must be filed within 45 days of the arraignment. C.P.L. §§ 255.10, 255.20. Therefore, his first trial counsel was the only one positioned to move to dismiss the indictment. Without an opportunity to make such a pre-trial motion, this Court cannot say that Bowman's third trial counsel's behavior fell below an objective standard of reasonableness as required by Strickland.

Even if this claim were timely raised, Bowman cannot prove that he suffered prejudice from the faulty grand jury charge. A jury verdict of guilty beyond a reasonable doubt suffices to

overcome errors at the indictment stage. U.S. v. Mechanik, 475 U.S. 66, 67 (1986); Dickens v.

Filion, 02 Civ. 3450 (DLC)(AJ), 2002 WL31477701, at *11 (S.D.N.Y. Nov. 6, 2002) report and

rec. adopted, 2003 WL 1621702 (S.D.N.Y. Mar. 28, 2003) ("A jury conviction transforms any

defect connected with the grand jury's charging decision into harmless error, because the trial

conviction establishes probable cause to indict and also proof of guilt beyond a reasonable

doubt."). This is so even where the reviewing court disapproves of the trial counsel's behavior.

See, e.g., Dixon v. McGinnis, 492 F. Supp. 2d 343, 348 (S.D.N.Y. 2007) (denying an ineffective

assistance of counsel claim because, although trial counsel's failure to timely submit a motion to

dismiss an indictment was "negligent at best, and [could] not be considered 'sound trial

strategy,'" the defendant was ultimately found guilty after a trial, so any defect was cured);

Bingham v. Duncan, 01 Civ. 1371 (LTS)(GAY), 2003 WL 21360084, at *4 (S.D.N.Y.

2003) (holding that a subsequent conviction cures any defect in a grand jury proceeding and

forecloses the possibility of a Sixth Amendment violation).

　　　　Here, the jury returned a verdict of guilty on the first-degree assault charge. Under

Mechanik, this cured any defect in the charging of the grand jury. Additionally, the trial judge

denied the ADA's motion to charge the petit jury in the same manner as he had charged the

grand jury, declaring it a violation of McGee. In his jury instructions, the judge explained that an

indictment is "proof of nothing," (Tr. at 1249), and outlined the two elements of first-degree

assault as "attempt[] to commit robbery in the first- or second-degree," and "in the course of and

in the furtherance of the commission of the attempted commission of the robbery, [defendant] or

another participant in the attempted commission of that robbery caused serious physical injury to

Kenneth Girven," (Tr. 1279). The judge explained the elements of conspiracy independently,

stating that "The People must prove beyond a reasonable doubt not only that the defendant

intended the – that conduct constituting one of the crimes I have mentioned, but that he agreed with one or more other people to engage in or cause the performance of that particular crime. (Tr. 1287.) Thus, the jury convicted Bowman on a sound jury charge, see Chalmers v. Mitchell, 73 F.3d 1262, 1267 (2d Cir. 1996) ("[A court may] assume that a jury applies the instructions it is given."), further convincing the Court that the verdict overcame any error at the indictment stage.

Accordingly, Bowman has not met his burden to obtain federal *habeas* relief for his trial counsel's failure to move to dismiss the indictment.

### (b)  Failure to Request a Missing Witness Charge

Bowman argues that his trial counsel was in effective because he failed to request a missing witness charge for Mark Ward, Bowman's cousin. The factual background of this claim is as follows:

A witness for the Government, Desmond Deal, provided testimony that he had committed various robberies with Mark Ward, and that Bowman gave Ward and Deal rides on two occasions for which he was paid 100 dollars. The question was whether Bowman was hired as a get-away driver for those robberies or simply as a taxi driver on different occasions. Although Mark Ward was originally on the Government's witness list, he was not called at trial. Bowman argues that this is because Ward was unable to corroborate Deal's testimony.

Under New York law, the missing witness instruction allows a jury to draw an unfavorable inference based on a party's failure to call a material witness who would normally be expected to support the party's version of events. People v. Savinon, 791 N.E. 2d 401, 403 (N.Y. 2003). A party seeking a missing witness charge must demonstrate that "there is an uncalled witness believed to be knowledgeable about a material issue pending in the case, that

such witness can be expected to testify favorably to the opposing party and that such party has failed to call him to testify." <u>People v. Keen</u>, 728 N.E.2d 979, 982 (N.Y. 2000) (citing <u>People v. Gonzalez</u>, 502 N.E.2d 583, 586 (N.Y. 1986)). The burden then shifts to the opposing party who, in order to defeat the request for a missing witness charge, must demonstrate, *inter alia*, that the "testimony from the missing witness would be merely cumulative to other evidence . . . ." <u>Keen</u>, 728 N.E.2d at 982-83; <u>see also</u> <u>Davis v. Mantello</u>, 42 F. App'x 488, 491 (2d Cir. 2002) (citing <u>People v. Gonzalez</u>, 502 N.E.2d 583 (N.Y. 1986)).

As a preliminary matter, Bowman has not shown that he was entitled to a missing witness charge. There is no evidence in the record that Ward was knowledgeable about "material" issues in this case. Indeed, defense counsel remarked in his closing, "Mark Ward . . . another individual who has nothing to do with this case in any shape or form that you know of that is in any way disreputable, unreliable, or anything . . . There's [*sic*] no phone calls from Mark Ward back to . . . Edward Bowman." (Tr. 1131.) Instead, Ward would be called simply to testify about the robberies he committed with Deal and whether Bowman was involved. But whether Bowman had criminal associations with two individuals who are not co-defendants in this case is not a "material" issue in this case. Thus, on the information provided, this Court cannot say that Bowman would have been entitled to a missing witness charge.

As such, Bowman has not overcome the presumption that his counsel's decision not to request a missing witness charge was strategic. <u>Henry</u>, 409 F.3d at 63. On the contrary, it is possible that calling Ward would have been prejudicial to Bowman if he were to testify that Bowman was present during other robberies. As the Government argues, the prosecutor specifically refrained from asking Deal whether Bowman had served as a getaway driver. It was

reasonable for defense counsel to choose to protect Bowman from potentially prejudicial testimony on a detail that was not material to the ultimate issue.

Absent any indication that trial counsel's failure to request a missing witness charge was unreasonable, Bowman has not overcome the deferential <u>Strickland</u> standard of review, and the Court should deny *habeas* relief on this ground.

### B. Testimony Concerning Information from Unnamed Witness

Bowman seeks *habeas* relief on the ground that hearsay evidence was impermissibly used against him. In a pretrial application made before impaneling the jurors for the first trial, the ADA requested a pretrial ruling that the prosecution could elicit brief background testimony from Detective Christopher Killen, a police officer with the 32nd precinct who was working on the night in question and investigated the scene after the incident. Specifically, an unnamed civilian provided information on September 2, 2003, at the 32nd Precinct, that caused the police to begin looking for Jason Rivera, Stacy Liggan, Roland Roberts, and "Fu" (Bowman). The trial judge permitted this testimony over defense counsel's objection.

Bowman argues that this ruling and use of this testimony at trial violated his Fourth Amendment right. Bowman argues that probable cause for his arrest was lacking because the police did not verify the identity and reliability of the unnamed individual from whom it obtained Bowman's nickname. This argument fails for several reasons.

By arguing that lack of information that identifies the civilian undermines the probable cause supporting his arrest, Bowman raises a Fourth Amendment claim that is not cognizable on federal *habeas* review. <u>See, e.g.</u>, <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal *habeas* relief is not available on the ground that evidence produced at trial was the result of an

unconstitutional search or seizure. Stone v. Powell, 428 U.S. 465, 482 (1976). To determine whether a defendant had a chance to fully and fairly litigate his claims, courts examine whether (1) the State provided corrective procedures to redress the alleged Fourth Amendment violations and (2) despite such corrective mechanisms, the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. Capellan v. Riley, 975 F.2d 67, 71 (2d Cir. 1992). All that must be shown is that the State provided an opportunity to litigate the petitioner's Fourth Amendment claim; whether or not the petitioner actually "took advantage of the State's procedure" is not relevant. Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002).

Bowman acknowledges the obstacle that Stone poses for his Fourth Amendment claim. (Traverse 28-45.)  Nevertheless, he argues that the state process for review of such claims broke down in this instance because the judge presiding over the 2004 suppression hearing "obstruct[ed]" the then-defense attorney's attempt to obtain the affidavit that accompanied the search warrant for the suspects in the incidents. (Traverse at 32; see Suppression Hearing Tr. ("Supp. Tr.") 305.) Bowman argues that this affidavit would have revealed whether probable cause was present under the Aguilar-Spinelli standard, which requires that the judge signing the warrant be assured that the informant is reliable and credible and be informed of the underlying circumstances relied on by the person. See People v. Parris, 632 N.E.2d 870, 872 (N.Y. 1994) (citing Spinelli v. U.S., 393 U.S. 410 (1969), and Aguilar v. Texas, 378 U.S. 108 (1964)). The judge denied two requests by defense counsel to obtain the affidavit, saying that "the search warrant . . . is not the subject of this hearing." (Supp. Tr. 305.)

While Bowman explains his disagreement with the judge's decision here, he has not demonstrated any infirmity with the suppression court's determination of his Fourth Amendment

27

claim. Federal courts have already determined that C.P.L. § 710.10 *et seq.*, New York's procedure for litigating Fourth Amendment claims, is constitutionally adequate. <u>Cappellan</u>, 975 F.2d at 70 n.1. Bowman had a full and fair opportunity to litigate the claim – defense counsel raised this in a pretrial application – and did so all the way through the Appellate Division and Court of Appeals.

This claim also fails on the merits. Under New York law, Detective Killen's testimony was admissible without further verification. Generally, information provided by a person who does not testify at trial that helps explain the trajectory of a police investigation is not considered hearsay and is admissible for a limited purpose. <u>People v. Maldonado</u>, 648 N.Y.S.2d 7 (N.Y. App. Div. 1996) (citing <u>People v Williams</u>, 579 N.Y.S.2d 371, 372 (N.Y. App. Div. 1992), <u>lv denied</u> 79 N.Y.2d 954 (N.Y. 1992)). It is not considered hearsay because it is not offered for its truth; rather, it is offered to explain the actions of police officers. <u>See</u> <u>People v. Garcia</u>, 726 N.Y.S.2d 27, 29 (N.Y. App. Div. 2001); <u>People v. Cruz</u>, 654 N.Y.S.2d 345, 346 (N.Y. App. Div. 1997) (police testimony at trial that bystanders had pointed at defendant was admissible as background information to explain the circumstances leading to defendant's arrest).

Before Bowman's third trial, the ADA, in a pre-trial application, sought to admit this testimony to explain the development of the police investigation. He argued that, without referencing the police's contact with the unknown civilian, "the jury is left completely unknown [*sic*] about how the police were able to connect these individuals to that particular crime," and that the testimony would help avoid "speculat[ion]." (Tr. 14-15.) Bowman's attorney objected to the application on the ground that it was prejudicial and did not have "any evidentiary value whatsoever." (Tr. 16.) The Court finds that, because Detective Killen's testimony provided no substantive information, and it referred only to the fact that a conversation about the incident

occurred, (see Tr. 665), it serves primarily to complete a narrative about a police investigation. Under Maldonado, the testimony was admissible.

Accordingly, because Stone precludes federal *habeas* review of Fourth Amendment claims and, under New York law, the testimony was otherwise admissible, *habeas* relief on this ground should be denied.

### C.  Jury Instruction

Bowman argues that his due process rights were violated when the trial judge delivered a "no inference" charge to the jury without prior request from Bowman. (Petition at 42.) During *voir dire*, the trial judge explained to the jurors that "the defense has no burden or obligation to do anything whatsoever during the course of this trial . . . . [Defense counsel] does not have to put his client on the stand." (Tr. 233.) After the close of the trial, the judge instructed the jury: "The defendant did not testify in this case. And I charge you the fact that he did not testify is not a factor from which any inference unfavorable to the defendant may be drawn." (Tr. 1258-59.) Bowman argues that this was improper under C.P.L. § 300.10, which states, "[u]pon request of a defendant who did not testify in his own behalf, *but not otherwise*, the court must state that the fact that he did not testify is not a factor from which any inference unfavorable to the defendant may be drawn." C.P.L. § 300.10(2) (emphasis added). Because Bowman did not request this jury instruction, he claims his due process rights were violated.

From the record, it does appear that the judge delivered a jury instruction that contravened the mandate of C.P.L. § 300.10. But the bar for attaining *habeas* relief based on an erroneous jury instruction is high. "[F]ederal habeas corpus relief does not lie for errors of state law." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)). Instead, it must be established "not merely that the instruction is

undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). Jury instructions violate federal due process only if they "fail[] to give effect to [the] requirement" that the prosecution must prove every element of a charged offense beyond a reasonable doubt. Middleton v. McNeil, 541 U.S. 433, 437 (2004).

Even assuming the trial court's instruction was erroneous under C.P.L. § 300.10(2), this is not enough to obtain *habeas* relief. Bowman has not shown that he was deprived of his federal due process rights. The judge did not mischaracterize the burden of proof or relieve the prosecution of proving every element beyond a reasonable doubt. Unambiguously, he stated, "[t]he People have the burden of proving the defendant's guilt as to each and every fact and every necessary element for conviction." (Tr. 1259.) See also Mendez v. Graham, 11 Civ. 5492 (ARR), 2012 WL 6594456, at *12 (E.D.N.Y. Dec. 18, 2012) (denying *habeas* relief for a violation of C.P.L. § 330.10(2)).

Because Bowman has not shown that a federal due process right was violated by the trial judge's statement, *habeas* relief on this ground should be denied. Moreover, because of the otherwise accurate jury instructions provided by the judge, Bowman cannot show that he was prejudiced by the comments. Strickland, 466 U.S. at 694. As such, he cannot prevail on an ineffective assistance claim on this ground either.

### D. Prosecutorial Misconduct

Bowman argues at various points in his petition that the prosecutor committed misconduct. He argues that the prosecutor (a) elicited hearsay testimony in violation of the Confrontation Clause; (b) elicited false testimony; (c) revealed to the jury that Bowman had a criminal record; (d) provided evidence of Bowman's debts; and (e) bolstered the credibility of

his witnesses. These claims were raised in the *pro se* appellate brief and summarily rejected by the Appellate Division. As addressed above, the bolstering claim is unexhausted because it was not properly raised to the Court of Appeals. <u>See</u> Point II(B)(2). The remaining claims are discussed below.

A federal court conducting a *habeas* review of prosecutorial misconduct reviews the allegations with an eye towards fundamental fairness. The narrow question is whether the "incident made [the petitioner's] trial so fundamentally unfair as to deny him due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 645 (1974); <u>see also</u> <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 252 (2d. Cir. 1998) ("Our scope of review [of prosecutor misconduct] on *habeas* is . . . quite limited."). Indeed, in <u>Donnelly</u>, the Supreme Court instructed federal courts reviewing *habeas* petitions to distinguish between "ordinary trial error of a prosecutor and that sort of egregious misconduct . . . [which] amount[s] to a denial of constitutional due process." <u>Donnelly, 416 U.S.</u> at 647-48. An incident of prosecutorial misconduct is reviewed "in the context of the entire trial," <u>Miranda v. Bennett</u>, 322 F.3d 171, 180 (2d Cir 2003) (quoting <u>Donnelly</u>, 416 U.S. at 639), and the petitioner must show that the prosecutorial misconduct caused "substantial prejudice," <u>U.S. v. Whitten</u>, 610 F.3d 168, 202 (2d Cir. 2010); <u>see also</u> <u>Bentley v. Scully</u>, 41 F.3d 818, 823 (2d Cir. 1994) (to be entitled to relief, a *habeas* petitioner must show that the prosecutor's comments "had substantial and injurious effect or influence in determining the jury's verdict") (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993).

The Court of Appeals for the Second Circuit has created a three-part test to determine whether prosecutorial misconduct has caused substantial prejudice. The test requires courts to assess "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." <u>U.S. v. Elias</u>, 285 F.3d 183, 190 (2d Cir. 2002).

### 1.  Hearsay claim

Bowman argues that his Sixth Amendment right to confront and cross-examine witnesses was violated when the prosecutor made use of hearsay information at trial. During a re-direct examination, the prosecutor asked Detective Ralph Hanna, a police officer with the 32nd precinct who investigated the incident, about information obtained from an unknown witness on the street at the scene of the crime. The prosecutor asked, "And in fact, there were other witnesses at the scene who said that a white livery cab was seen speeding away, isn't that right?" Detective Hanna responded, "Yes." Defense counsel made an objection that the court overruled. (Tr. 619-20.)  Outside the presence of the jury, defense counsel renewed his objection to the testimony, focusing on the inclusion of the phrase "speeding away" in the prosecutor's question. He stated, "To put it in that form and to put it in the mouth's [*sic*] of witnesses speeding away that I cannot not cross-examine is objectionable and I ask that that be stricken." (Tr. 684.) The Court responded, "All right, your exception is noted for the record." (Id.) Bowman argues that Detective Hanna's testimony was hearsay, and that its use violates the Confrontation Clause of the Sixth Amendment, which affords the accused the right "to be confronted with the witnesses against him." U.S. Const., amend. VI.

The primary purpose of the Confrontation Clause is to prevent out-of-court statements from being used against a criminal defendant in lieu of in-court testimony subject to cross-examination. See Crawford v. Washington, 541 U.S. 36, 54-55 (2004); Douglas v. Alabama, 380 U.S. 415, 418-19 (1965). The Confrontation Clause applies only to testimonial statements, which the Supreme Court has described as "*ex parte* in-court testimony or its functional equivalent, . . . extrajudicial statements . . . contained in formalized testimonial materials, . . . statements that were made under circumstances which would lead an objective witness reasonably to believe

that the statement would be available for use at a later trial . . ." Crawford, 541 U.S. at 51-52 (citations omitted). A statement is "non-testimonial," when it is "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis v. Washington, 547 U.S. 813, 822 (2006). Similarly, out-of-court statements admitted for purposes other than showing the truth of the matter asserted do not implicate the Confrontation Clause. Crawford, 541 U.S. at 59, n.9.

Here, Bowman raises two components to the prosecutor's question that are subject to scrutiny. The first is the fact that the prosecutor referenced information an eyewitness provided about the white car. As the ADA argued, this information was admitted for the purpose of "explain[ing] why it was the police department took three cabs, what information they had that led them to [Bowman] and to take his cabs." (Tr. 683-84.) Because the investigation had a false lead, the prosecution aimed to explain how it was that the police began to focus on Bowman. Thus, it was not intended to prove the truth of the matter – and indeed, no one disputes that Bowman was at the scene. (See Tr. 684.) Therefore, that portion of the statement was not hearsay and could not violate the Confrontation Clause.

The phrase "speeding away" is admittedly more controversial, but it is not hearsay either. The explanation in the transcript is sparse, but the prosecutor's justification suggests that there was something about the information that explains why the police department sent out *three* cars. The information was not offered to prove that Bowman *did* speed away; that is, it was not offered to prove the truth of the matter. Even if it were, it would fall comfortably into the non-testimonial category outlined in Davis: the information was offered to law enforcement with the primary purpose of assisting in the investigation of this crime. To the reasonable observer, there

would be no expectation that the eyewitness would testify at trial. <u>Davis</u>, 547 U.S. at 821; <u>Crawford</u>, 541 U.S. at 51-52.

Nevertheless, the phrase was prejudicial. Because it cast the information in a light that implicated guilt, in a fashion that could not be cross-examined by the defense counsel, this Court will analyze the prosecutor's conduct under a fundamental fairness standard. <u>Donnelly</u>, 416 U.S. at 645; <u>Elias</u>, 285 F.3d at 191.

The inclusion cannot be said to be of extreme severity. There is a plausible explanation for why it was given: to justify the police response as proportional. Moreover, it was an isolated incident; this phrase was not repeated over the course of the trial or Detective Hanna's testimony, so the Court cannot look at the cumulative effect of repeated instances of misconduct. <u>See</u> <u>Elias</u>, 285 F.3d at 191 (severity of the misconduct is mitigated if the misconduct is an aberration in an otherwise fair proceeding). As for the second prong, which examines any curative actions, the Court recognizes that no action was taken to mitigate the effect of this statement: defense counsel's objection was overruled and the jury did not hear the defense counsel's subsequent explanation of his objection. Nevertheless, Bowman has not met his burden of showing that the phrase caused him substantial prejudice. Detective Girven had already testified that he saw a white car at the scene that drove away when he was shot. (Tr. 67.) Thus, the only additional information provided to the jury was the spin of "*speeding* away" (emphasis added). Though possibly prejudicial, it does not rise to the level of "egregious misconduct" that would undermine the fundamental fairness of the trial as a whole.

Accordingly, Bowman has not shown that the inclusion of the testimony permeated the entire trial, and *habeas* relief on this ground should be denied.

### 2.   Reference to Bowman's Criminal Record

Bowman argues that the prosecutor erred by suggesting to the jury in his summation that Bowman had a criminal record. He argues that this violated, generally, his Fifth Amendment rights. The Court presumes he is making a fair trial argument under the due process clauses of the Fifth and Fourteenth Amendments.

The context of this argument is as follows. In his summation, defense counsel argued that the Government offered no evidence that Bowman had any prior relation or criminal association with the alleged co-defendants. In response, the prosecutor, out of the presence of the jury, asked to reopen the case to rebut this assertion. The prosecutor said that, during direct examination, he did not elicit from Desmond Deal the nature of what happened between him, Mark Ward, and Bowman when Bowman was paid $100 to drive them somewhere, because he thought it would be "unfair." (Tr. 1170.) He argued, however, that it was a misrepresentation for defense counsel to argue that there is no evidence of criminal behavior and asked to recall Desmond Deal for further questioning. To that, defense counsel argued, "the People could have attempted to elicit . . . but there is no proof that Mr. Bowman had ever committed any crime or was arrested or had ever participated in that." (Tr. 1172.)

The Court denied the prosecutor's application to reopen the case. Instead, the prosecutor stated several times during his summation that no assumptions could be made about Bowman's criminal history. For example:

> Do not make any assumptions. Rely on what the evidence tells you. Now you might assume that whether or not a defendant has a criminal history is relevant and therefore, you would know about it. It's not relevant. Whether this defendant has a criminal history is irrelevant. Do not make any assumptions about his history because you don't know anything about his history.

(Tr. 1242-43.) After the summation, Bowman's counsel made an application for a mistrial on this point. He argued that there was no proof of any criminal association offered between Bowman and any of these individuals, with the exception of Desmond Deal. (Tr. 1247.) He argued: "It is the crux of [the prosecutor's] argument that Mr. Bowman is guilty because of his criminal association with these individuals." (Tr. 1246.) In other words, the defense counsel argued that the prosecutor's strong insinuation of an undisclosed criminal record would provide a missing link in the Government's case.

As a general matter, both the prosecution and the defense are entitled to "broad latitude in the inferences they may suggest to the jury during closing arguments, provided they do not misstate the evidence, refer to facts not in evidence, or express counsel's personal belief as to guilt or innocence." U.S. v. Smith, 778 F.2d 925, 929 (2d Cir. 1985) (citations omitted). Evidentiary rules are relaxed further when the prosecution responds to a statement in the defense's closing argument: "In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo. . . . [I]f the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." U.S. v. Young, 470 U.S. 1, 12-13 (1985).

The trial court had three opportunities to affect the trajectory of the discussion about Bowman's criminal history. First, the trial court denied the prosecution's request to reopen the case to introduce further evidence after defense counsel emphasized the lack of evidence regarding a criminal record in his closing. Second, the court overruled defense counsel's objections to, *inter alia*, the Government's statement in summation, that "Now the truth is you know nothing about this defendant's history except what [defense counsel] wants you to assume

about him." (Tr. 1242.) Third, the court denied defense counsel's request for a mistrial based on the Government's comments.  Considering the broad latitude that counsel gets in closing arguments and when responding to defense counsel's arguments, this Court cannot say that these decisions were unreasonable. Each counsel took advantage of the ambiguity regarding Bowman's criminal history to warn the jury against making assumptions: the defense reminded the jury there was no actual evidence of criminal associations; the prosecution, in response, reminded the jury that absence of a criminal record does not mean one does not exist. Neither counsel strayed from the facts, misstated any evidence, nor misconstrued the burden of proof. The prosecutor did not reference any specific bad acts or past convictions that would raise evidentiary problems.

Moreover, the trial court took preemptive and curative action. Before the closing arguments, the judge commented to the jury:

> In making their summations, counsel will review the evidence you have heard and seen . . . and will suggest to you certain inferences or conclusions which they, in their opinion, believe may be properly drawn from the evidence. That is the purpose of such summations . . . . Bear in mind, members of the jury, nothing that counsel may say in their summation is evidence in this case. You have heard the evidence. You and you alone are the sole and exclusive judges of the facts in this case.

(Tr. 1086-87.) In his jury instructions, the judge included the comment, "All comments or remarks made by counsel or between court and counsel must be disregarded. In other words, you must decide this case solely on the evidence." (Tr. 1249.) Similar statements from the trial judge, reminding the jury of what information is to be considered in deliberations, have been viewed as curative of otherwise improper statements by the prosecution. See, e.g., Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (finding that, although several of the prosecutor's comments were inappropriate – for example, personally vouching for witnesses' credibility – the trial

court's jury instructions that summations were not evidence constituted "curative action");
Wright, 2012 WL 4478393, at * 9 (same).

Because counsel is afforded "broad latitude" in closing arguments, Smith, 778 F.2d at
929, and the judge provided sound instructions to the jury, Bowman has not met his burden
under Donnelly and Elias to establish that his trial was fundamentally unfair. Accordingly, this
claim should be denied.

### 3.   Evidence of Debt

Bowman argues that the prosecutor's conduct also violated his due process rights by
introducing evidence of his financial difficulties; specifically that he received public benefits and
owed money to American Express.

Defense counsel raised concerns about these witnesses before they testified. In a sidebar
with the judge, the prosecutor explained that these witnesses would rebut the characterization of
Bowman provided in the opening that he ran a taxicab business with three cars and had no
financial incentive to commit a robbery. The Government argued that the evidence was not
offered as bad act evidence, rather to show Bowman's financial condition. Over defense
counsel's objection, the Court asked the Government, "So you're offering them for motive?" and
then, "I'll permit it." (Tr. 536.)

In general, evidence of an accused's commission of other crimes or bad acts is
inadmissible if such evidence is offered solely to establish a criminal disposition or propensity.
People v. Rojas, 760 N.E.2d 1265, 1267 (N.Y. 2001) (a criminal case should be tried on the facts
and not on the basis of a defendant's propensity to commit the crime charged) (citing People v.
Molineux, 61 N.E. 286, 295 (N.Y. 1901)). But evidence of a collateral act may be relevant to
some material fact in a case, for example, to establish motive, intent, absence of mistake or

accident, existence of a common scheme or plan, or identity of the perpetrator. Molineux, 61 N.E. at 299-300.

To determine whether evidence of past crimes or bad acts may be admitted in a particular case, the trial court must engage in the following two-part inquiry. First, the proponent of the evidence must identify some material issue to which the evidence is directly relevant. Second, the trial court must weigh the evidence's probative value against its potential for undue prejudice to the defendant . See, e.g., People v. Alvino, 519 N.E.2d 808, 812 (N.Y. 1987). "If the evidence has substantial probative value and is directly relevant to the purpose – other than to show criminal propensity – for which it is offered, the probative value of the evidence outweighs the danger of prejudice and the court may admit the evidence." People v. Cass, 965 N.E.2d 918, 924 (N.Y. 2012).

Here, the Government sought to admit the testimony from the representatives of the Human Resource Administration and American Express for a proper purpose: motive. Issues of motive were vigorously disputed in this case. A key aspect of the defense was that Bowman was a taxi cab driver who had no reason to get involved in illegal activity. In response to this argument, the Government sought to suggest that Bowman could have a motive stemming from financial hardship.

Because motive was an important issue in this case, this Court finds that the trial court was not unreasonable to conclude that this evidence was admissible under Molineux. This is consistent with decisions of courts in analogous circumstances. U.S. v. Graziano, 558 F. Supp. 2d 304, 321-23 (E.D.N.Y. 2008) (where a key aspect of the prosecution was motive, court's admission of prior threats and attempted assaults made by the defendant was proper to show that arson, the subject of the case, was the culmination of a series of escalating threats) (citing cases).

Accordingly, because the evidence of debt was admissible under the New York's evidentiary rules and the Court has no evidence that its admission undermined the fairness of the trial as a whole, *habeas* relief on this ground should be denied.

### 4.   False Testimony

Bowman raises three instances where, he argues, the prosecutor elicited false testimony from witnesses. First, he argues that the prosecutor falsely implied that Roland Roberts gave Bowman's name to the police, when in fact it was an unidentified individual. Second, he argues that the prosecutor elicited false information from a Verizon representative about his telephone records. Third, he argues that an employee from the Manhattan District Attorney's Office testified falsely that Roland Roberts called him on August 31, 2003.

In order to prevail on a claim of prosecutorial misconduct for eliciting false testimony, the petitioner must first show that (1) there was false testimony; (2) the Government knew or should have known that the testimony was false; and (3) there was a reasonable likelihood that the false testimony could have affected the judgment of the jury. U.S. v. Helmsley, 985 F.2d 1202, 1205-06 (2d Cir. 1993) (citations omitted). The intent of the prosecutor to provide false testimony is a critical component, as "[e]ven a direct conflict in testimony does not, in itself, constitute perjury." Moore v. Greiner, 02 CIV. 6122 (SAS)(DF), 2005 WL 2665667, at *13 (S.D.N.Y. Oct. 19, 2005) (citing U.S. v. Gambino, 59 F.2d 353, 365 (2d Cir. 1995)). Secondly, on *habeas* review, the petitioner must satisfy the requirements of Donnelly to show the effect of the misconduct on the trial as a whole.

### a.   Direct Examination of Detective Hanna

Regarding the first instance of purported false testimony, Bowman cannot get passed the first prong of the Helmsley test. Bowman claims that Detective Hanna's testimony that Roland

Roberts gave him the names of Liggan, Rivera, and "Fu" (Bowman) on September 6, 2003, was false because it was already established that an "unknown civilian" told the police officers about the suspects. The record shows that Detective Hanna first testified that he spoke with "a civilian the night of September 5 into the 6," and that, "based on that conversation of that individual," the NYPD began to look for four individuals: Rivera, Liggan, Roland Roberts, and Fu. (Tr: 576-77.) Detective Hanna was then assigned to a team to look for Roland Roberts on the morning of September 6, 2003. (Tr: 577.) They arrested him and subsequently spoke to detectives at the 32nd precinct. (Tr: 618.) During that questioning, Roberts provided the nicknames Mace, Fu, and JJ. (Id.)

The Court does not consider these two sequences of events to be plainly contradictory. On the contrary, it appears that an unknown civilian provided names to the police that were later verified by Roland Roberts. The record shows that the identifications took place sequentially: that of the unknown civilian was provided on "September 5 into the 6" and that of Roland Roberts on September 6. Even if the two testimonies were contradictory, Bowman has not provided the Court with information about why the former would be true and the latter false, shown that the ADA knew it was false, or how this would have affected the jury's decision. Accordingly, he has not met his burden under Helmsley.

### b. Disparities Between Testimonies of Verizon Representatives

Bowman's second instance of alleged false testimony concerns a disparity between the testimonies of the Verizon representatives called at his first trial and his third trial. At the first trial, the prosecution called Verizon representative, Mr. Connell. He was questioned about the phone records associated with the phone number (718) 299-6317 (the "718 number"), which is owned by Stacy Liggan's grandmother. (Transcript from the First Trial ("Tr1.") 441.) Mr.

Connell testified that, on August 16, 2003 at 4:12 p.m., a three-way call was placed between

Liggan's grandmother's phone, (646) 265-1657 (the "646 number," associated with Roland

Roberts), and another number, (718) 294-8197. (Tr1. 463.) He also testified that, on August 25,

2003 at 12:51:50 a.m., the 718 number placed a call to the 646 number that lasted nine seconds,

and that a second call was made to (212) 410-9740 (the "212 number"), another number

associated with Roland Roberts, at 12:52 a.m. that lasted 10 minutes and 54 seconds. When

asked whether there was an incoming call during the second phone call – which would have

resulted in a three-way call – he answered, "I don't see any." (Tr1. 470.)

  At the third trial, the prosecution called a different Verizon representative, Ms. Marcia

DeLeon. Ms. DeLeon examined the same records associated with Stacy Liggan. Similar to Mr.

Connell, she testified that a three-way call was made on August 16, 2003. (Tr: 699.) But in

contrast to Mr. Connell's testimony, she testified that a three-way call was made on August 25,

2003, that linked the 718 number, the 646 number, and the 212 number.

  Bowman suggests that this is the root of the false testimony: that Mr. Connell testified

that a three-way call was placed on August 16, and Ms. DeLeon testified that a three-way call

was placed on August 25. As a preliminary matter, the record shows that each representative

testified to a three-way call on August 16. The record also shows that, the representatives were

shown two categories of records. "M files" show incoming and outgoing calls and "LUD data"

show only outgoing calls. Both representatives were shown Exhibit 132B, which was an M file

associated with the 718 number. This showed that that number dialed the 646 number on August

25 at 12:51:50, a call that lasted 9 seconds. It also showed that that number dialed the 212

number at 12:52:25, a call that lasted 10 minutes and 54 seconds. When looking at the same

Exhibit, Mr. McConnell was asked whether he saw an incoming call coming in at 1:02 a.m., and

he responded, "I don't see any." (Tr1. 470 .) But at the third trial, after looking at 132B, Ms.
DeLeon was shown Exhibit 132A, which contained LUD data. She testified that another call was
placed at 1:02 a.m. to (718) 727-0096, a phone number associated with Shonte Santana, during
the interval that the 718 number would have been connected to the 212 number. (Tr. 703.)

The Court cannot agree with Bowman that this discrepancy rises to the level of "eliciting
false testimony." The two representatives testified while looking at identical exhibits in each
trial. Their testimony is consistent with each other at every point except in the evaluation of the
August 25 call. The divergence regarding the August 25 call appears to be attributable to the
thoroughness of the prosecutor's questioning, and the presentation of an additional document,
rather than evasion or falsity on the part of the second representative. Moreover, the people
associated with these phone numbers are Stacy Liggan, Roland Roberts, Desmond Deal, and
individuals surrounding them. Coordinated activity and communication among and between
these three individuals is not at issue. The primary concern at the trial was whether Bowman
participated in these communications. Because his phone number is not implicated in this
particular series of calls (although it was implicated later when he lent his phone to Liggan), it is
not clear how the difference in testimony would have contributed to Bowman's conviction.

Bowman also raised an ineffective assistance claim related to his trial counsel's failure to
object to this testimony. But because the Court cannot find an instance of false testimony related
to the Verizon phone records here, the Court cannot say that Bowman's trial counsel was
ineffective for not objecting to Ms. DeLeon's testimony or subpoenaing Mr. Connell to testify at
the third trial. Therefore, all claims related to this issue should be denied.

### c.   Testimony of Manhattan DA employee

The third instance of alleged falsity concerns the testimony of Manhattan District Attorney Office employee, Ms. Julianne Eum. Her testimony is relatively short and focuses on the phone records of the 646 number, which is Roland Roberts's cell phone, between August 18, 2003, and September 7, 2003. Ms. Eum testified that Roberts made two phone calls during this period to Bowman, both on August 31, 2003. Bowman argues that this is false, and that his phone records would show that he had never made a phone call to Roberts, nor received one from him. He further argues that he suffered prejudice because his counsel did not object to this testimony.

From the record, the Court is unable to determine what information was in front of Ms. Eum that caused her to say that the 646 number had called Bowman's phone. It appears from the transcript that all witnesses who testified to phone records were looking at the actual records, visible to counsel and the jury. Considering the fact that Bowman's phone number, (917) 670-0246, was established numerous times at trial, the court and the jury were well-positioned to judge the veracity of the witness and the records. Bowman has not met his burden of showing that the information Ms. Eum provided was false.

More importantly, it does not appear that this fact affected the rest of the trial. It is true that a central component of the defense's argument was that Bowman had no prior relationship with his co-defendants apart from his cousin, Stacy Liggan. As such, a phone call between Bowman and Roland Roberts would contradict this. But an August 31 phone call between the two did not become a central part of the prosecution's case. It was not referenced in the Government's summation as bolstering the notion that Bowman had any association with Roland Roberts. The trial's extensive focus on phone records focused almost entirely on the records

between August 16 and August 26, 2003, in order to prove conspiracy before the incident. Therefore, it is highly unlikely that this piece of information affected the outcome of the trial.

Accordingly, since all three instances of alleged false testimony do not pass the Helmsley test, *habeas* relief on this ground should be denied.

### E. Legal Sufficiency

Bowman argues that the evidence presented at trial was legally insufficient to support his conviction. In particular, he argues that the prosecution's case rested on the testimony of Jason Rivera, a co-defendant, and that no other witnesses provided evidence that Bowman had the intent to participate in the robbery. This claim is exhausted, because it was presented to the Appellate Division and the Court of Appeals. But, for the reasons that follow, this Court finds that it is procedurally barred from review.

Procedural default in the state court will bar federal *habeas* review when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263 (citations omitted). See also Coleman, 501 U.S. at 730; Rodriguez v. Smith, 07 Civ. 9272 (RJH)(PED), 2011 WL 1842850, at *6 (S.D.N.Y. Apr. 13, 2011) ("[C]omity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon 'an adequate and independent finding of a procedural default.'" (quoting Harris, 489 U.S. at 262)). A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006). A decision will be "adequate" if it is "firmly established and regularly followed" by the state in question. Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

Here, at the close of the Government's case, Bowman's counsel submitted, "We ask for a trial order of dismissal in that the People have failed to prove a prima facie case of Mr. Bowman's guilt." (Tr: 1013). On appeal, the Appellate Division found that this was insufficient to preserve the claim, holding that "Defendant did not preserve his challenges to the legal sufficiency of the evidence and we decline to review them in the interests of justice."

New York's Criminal Procedure Law specifies that:

> For the purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal.

C.P.L. § 470.05(2). Regarding objections that the evidence presented at trial was legally insufficient to establish the verdict, New York law further instructs that a general motion to dismiss or post-verdict motion is insufficient to preserve an issue for appeal. People v. Harris, 779 N.E.2d 705, 724 n.18 (N.Y. 2002) ("Defendant did not object to many of the specific comments during the summation and the few objections defendant did raise were all of a general nature; his complaints are thus unpreserved.") (citations omitted); People v. Gray, 652 N.E.2d 919, 921 (N.Y. 1995) (a motion to dismiss must be "specifically directed" at the legal sufficiency to preserve an issue for appeal). A general motion to dismiss is one that is not "specifically directed at the alleged error." Gray, 652 N.E.2d at 921. The Court of Appeals for the Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05(2), is an adequate and independent state ground. See, e.g., Wainwright v. Sykes, 433 U.S. 72, 85-86 (1977); Velazquez v. Murray, 02 Civ. 2564 (KMW)(AJP), 2002 WL 1788022, at *9 (S.D.N.Y. Aug. 2, 2002) (citing cases). Thus, the

Appellate Division's decision that Bowman's claim was unpreserved was based on an independent and adequate state ground.

After finding that the claim was unpreserved, the Appellate Division stated, "As an alternative holding, we also reject [the challenges to the legal sufficiency of the evidence] on the merits." But this does not allow the federal court to conduct a *habeas* review on the merits. If the state court rejects a claim as unpreserved and then, in the alternative, notes that it would have rejected the claim on the merits if it had considered it, then the ruling is still considered to rest on procedural grounds. Bell v. Miller 500 F.3d 149, 155 (2d Cir. 2007) (state court's "contingent observation" is not an "adjudication on the merits" for the purposes of *habeas* review); cf. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810-11 (2d Cir. 2000) (holding that when a state court uses language such as "the remaining claims [are] *either* unpreserved *or* without merit," the state court has not adequately indicated that its judgment rests on a state procedural bar and the federal court may conduct a *habeas* review on the merits). Therefore, because the Appellate Division appeared to rest its decision on both grounds, Bowman's legal sufficiency claim is barred from this Court's review. Lee v. Kemna, 534 U.S. 362, 381 (2002); Gonzalez v. Perez, 11 Civ. 3744 (JMF)(THK), 2012 WL 2952851 (S.D.N.Y. May 2, 2012), report and rec adopted, 11 Civ. 3744 (JMF), 2012 WL 2952841 (S.D.N.Y. July 19, 2012) (finding that, where a general objection to the sufficiency of the evidence was made at trial and the Appellate Division ruled that the claim was not preserved for review, the decision rested on an independent and adequate state law barring federal review).

Bowman, in his Traverse, urges the Court to consider the factors outlined in Cotto v. Herbert, which identifies three guideposts for evaluating the reasonableness of a state's application of a procedural bar. 331 F.3d 217, 240 (2d Cir. 2003). Application of New York's

preservation rule here satisfies these three factors. First, there is nothing in the record showing that the trial court was aware of Bowman's principle claim that Jason Rivera's testimony was insufficiently corroborated; this clarity emerges in the appellate briefs and the *habeas* petition. If Bowman's counsel had raised the objection in the trial court, it would have ruled on the specific issue. Second, New York courts have long required claims challenging the legal sufficiency of the evidence to be preserved in the trial court. See, e.g., People v. Hines, 762 N.E.2d 329, 333 (N.Y. 2001); People v. Butchino, 966 N.Y.S.2d 706 (N.Y. App. Div. 2013). Finally, Bowman's counsel did not "substantially comply" with the specificity requirement, giving the court no foundation for the objection. Therefore, this case does not fall within the small category in which the state grounds are inadequate to block adjudication of the federal claim.

A petitioner's procedurally defaulted claim may not be reviewed on *habeas* review unless the petitioner (1) provides cause for the default and shows actual prejudice will result from barring the claim, or (2) demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice" because he is actually innocent. Coleman, 501 U.S. at 750. Cause can be established by showing that "some objective factor external to the defense impeded counsel's [or petitioner's] effort to comply with the State's procedural rule." Coleman, 501 U.S. at 753; Murray, 477 U.S. at 488 (external factors may include (1) a showing that the defendant's counsel was ineffective; (2) a showing that the factual or legal basis for a claim was not reasonably available at the time of default; or (3) interference by state officials that made compliance with the procedural mechanism impracticable). To establish actual innocence, a "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623-24 (citations omitted). A

petitioner must "support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." Schlup, 513 U.S. at 324.

Bowman has not met his burden of establishing either cause or prejudice for failing to preserve his legal sufficiency claim. In addition, he has not provided "new reliable evidence" to claim or establish actual innocence. Instead, his *habeas* petition and Traverse are focused on reiterating the evidence presented at trial, in particular whether Jason Rivera's testimony was adequately corroborated as a co-defendant. But this claim essentially asks this Court to re-evaluate the decision of the jury, which is not a reason for this Court to overcome the procedural bar.

Even if this Court were to review the merits, Bowman cannot make out a claim. As an initial matter, evidence is sufficient to support a conviction whenever, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). And a state court decision rejecting a sufficiency challenge may not be overturned on federal *habeas* review unless the "decision was 'objectively unreasonable.'" Cavazos v. Smith, 565 U.S. __ at __, 132 S. Ct. 2, 4 (2011) (quoting Renico v. Lett, 559 U.S. __, at __, 130 S. Ct. 1855, 1862 (2010)). This was recently referred to as a "twice deferential standard." Parker v. Matthews, 567 U.S. __, at __, 132 S. Ct. 2148, 2152 (2012); Cavazos, 132 S. Ct. at 4 ("It is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial.").

More specifically, Bowman's legal sufficiency claim rests on his view that the testimony of Jason Rivera, the only person to testify that Bowman was present during the planning of the robbery, was uncorroborated. C.P.L. § 60.22(1) ("A defendant may not be convicted of any

offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense."). But the requirements of New York's corroboration rule are "not severe." Mingo v. Artuz, 174 F.3d 73, 78 (2d Cir. 1999). "The corroborative evidence need only tend to connect the defendant to the crime; it need not establish all elements of the offense. Seemingly insignificant matters may harmonize with the accomplice's narrative so as to provide the necessary corroboration." People v. Steinberg, 595 N.E.2d 845, 849 (N.Y. 1992) (internal quotation and citations omitted); Estrada v. Senkowski, 98 Civ. 7796 (WHP), 1999 WL 1051107, at *18 (S.D.N.Y. Nov. 19, 1999) (under New York law, the corroborative testimony only needs to "connect the defendant with the crime in such a way that the jury may be reasonably satisfied that the accomplice is telling the truth").

Moreover, any violation of this state rule is not a basis for *habeas* relief. Caminetti v. U.S., 242 U.S. 470, 495 (1917) ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."); Smithwick v. Walker, 758 F. Supp. 178, 186 (S.D.N.Y. 1991) (New York safeguards regarding accomplice testimony exceed those of the Constitution). A conviction may be sustained on the basis of the testimony of a single accomplice, provided that the testimony is "not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." U.S. v. Gordon, 987 F.2d 902, 906 (2d Cir. 1993). "Any lack of corroboration goes to the weight of the evidence, not to its sufficiency, and a challenge to the weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal." Id.

Accordingly, because Bowman's legal insufficiency claim is procedurally barred and, in any event, he has not overcome the "twice deferential" standard protecting jury verdicts, *habeas* relief on this ground should be denied.

**F. Admission of Incomplete First Trial Testimony**

Bowman argues that the trial court improperly precluded him from introducing his entire testimony from his first trial at the third trial, and that this exclusion resulted in a violation of his constitutional right to a fair trial. To evaluate this claim, the Court must engage in a two-part analysis, examining (1) whether the exclusion was error under state law; and (2) whether the error amounted to the denial of a constitutional right to a fundamentally fair trial.

Under New York law, "a party offering part of the contents of a prior statement, whether of an adversary or of a witness, may be required to introduce all relevant parts of the statement, including those favoring the adversary, to avoid misleading the trier of fact about the statement's tenor." Prince, Richardson on Evidence § 1-102 (11th ed. 1995); People v. Dlugash, 363 N.E.2d 1155, 1162 (N.Y. 1977) ("Certainly, it is true that the defendant was entitled to have the entirety of his admissions, both the inculpatory and the exculpatory portions, placed in evidence before the trier of facts."). But see People v. Hubrecht, 769 N.Y.S.2d 36, 37 (N.Y. App. Div. 2003) (where a defendant made three statements to different persons in different settings, the completeness doctrine did not apply because they "could not be viewed as a single continuous narrative or process of interrogation").

Bowman testified at his first trial that he had previously attended a proffer session and told the police, untruthfully, that he was not present at the scene of the crime on August 26, 2003. At his first trial, he testified and explained this lie by saying – and proving – that his license was suspended and he feared a penalty for driving with a suspended license. He then relayed to the jury his version of events, that he indeed drove Liggan, Roberts, and Rivera to the scene, but was unaware of any conspiracy or plans to rob the gambling establishment. The jury

hung. Bowman did not testify at his second trial, but the record suggests that each of these points was read into evidence. The jury hung again.

At the third trial, Bowman did not testify, and the ADA introduced an abridged version of his first trial testimony that included only Bowman's abiding version of the events of August 26, 2003: that he was present but uninvolved in and oblivious to the conspiracy. Subsequently, the Government impeached Bowman's credibility by introducing testimony by Detective Stewart that Bowman attended a proffer session and lied. Defense counsel made an application to the court to introduce additional portions of Bowman's first trial testimony. Doing so would have resolved the apparent contradiction between Bowman's first trial testimony and the proffer session (indeed, this contradiction was the sole vehicle of introducing the proffer session testimony, which was otherwise protected). The trial court denied the application and Bowman was convicted.

"[F]ederal *habeas* corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Courts examining evidentiary trial errors as the basis for a *habeas* claim must consider "whether the excluded evidence was *material* to the presentation of the defense . . . ." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983). Materiality exists "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." U.S. v. Bagley, 473 U.S. 667, 682 (1985); see also U.S. v. Agurs, 427 U.S. 97, 112 (1976) (a federal court must determine that "the omitted evidence creates a reasonable doubt that did not otherwise exist"); Brecht v. Abrahamson, 507 U.S. 619, 622 (1993) (finding that the proper standard of review of trial errors on *habeas* review is whether the error "had substantial and injurious effect or influence in determining the jury's verdict) (citation omitted).

Resolution of the case required the jury to draw inferences about Bowman's knowledge before the attempted robbery, which required the jury to weigh the relative credibility of two critical witnesses, Bowman and Rivera. As such, the Court must determine whether omitted evidence that would have restored Bowman's credibility was material to the defense. Where a petitioner was convicted after two hung juries, a determination of materiality must include a comprehensive comparison of the evidence produced at each trial.

The Court, however, has not been provided with the transcript from the second trial in order to evaluate if the evidence submitted there was the same as the first trial, both of which resulted in hung juries, and if the evidence submitted in those trials was materially different from the third trial. Such evidence would weigh in favor of a finding that any evidentiary error in the third trial did, in fact, create a reasonable doubt as to the result of the proceeding. Moreover, legal arguments as to whether the failure to include the excluded testimony resulted in a violation of Bowman's right to a fair trial are complex. Given the substantive nature of this claim, Bowman and the Court would benefit from counsel.

Accordingly, within 30 days of service of this Report and Recommendation, the New York Attorney General shall provide Bowman and the Court with the transcript of Bowman's second trial in New York Supreme Court, which concluded on July 14, 2005, without a verdict. In addition, the Court appoints counsel from the C.J.A. panel pursuant to 18 U.S.C. § 3006A(a)(2)(B). Counsel shall file an appearance within 30 days of service of this Report and Recommendation, at which time the Court shall issue a briefing schedule. The time for parties to object to this Report and Recommendation is stayed pending resolution of this claim.

**CONCLUSION**

The petition for a writ of *habeas corpus* should be DENIED on grounds one through seven. The Court defers resolution on ground eight pending further briefing. The time for parties to object to this Report and Recommendation is stayed pending resolution of Bowman's challenge to his conviction on ground eight.

Because grounds one through seven of this petition make no substantial showing of a denial of a constitutional right, a certificate of appealability should not issue for those claims. See 28 U.S.C. § 2253. I further recommend that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order regarding those claims would not be taken in good faith and therefore *in forma pauperis* status should be denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

Dated: New York, New York
       September 19, 2013