UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

EDWARD BOWMAN,

                      Petitioner,

        -against-

STEVEN RACETTE,

                   Respondent.

-------------------------------------------------------------X

**12-CV-04153 (LTS)(SN)**

**<u>REPORT AND
RECOMMENDATION</u>**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:__ 4/24/2014

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE LAURA TAYLOR SWAIN:**

Edward Bowman filed a *pro se* petition for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, seeking to vacate his judgment of conviction. On September 19, 2013, the Court issued a Report and Recommendation, recommending that the petition be denied on seven of the eight grounds raised. Because the Court had serious doubts as to whether the petitioner's fundamental right to a fair trial was violated, the Court appointed counsel to brief the remaining claim pursuant to 18 U.S.C. § 3006A(a)(2)(B), directed the New York Attorney General to provide the Court and counsel with the second trial transcript, and stayed the time for the parties to object to the September 19, 2013 Report pending resolution of Bowman's eighth claim.

For the reasons set forth more fully below, the Court concludes that Bowman's conviction cannot stand and recommends that Bowman's petition for a writ of *habeas corpus* be GRANTED.

## BACKGROUND

In the September 19, 2013 Report and Recommendation, the Court provided a detailed account of the facts of Bowman's alleged crime, the police investigation, Bowman's three trials,

and his ultimate conviction. Only those facts material to Bowman's remaining claims are stated here.

## I.   Factual Background

### A.  The Proffer Session

On October 16, 2003, Bowman, along with his trial attorney, participated in a proffer session, sometimes called a "Queen for a Day" meeting. (Supp. Mem. of Law in Further Support of Pet. for a Writ of *Habeas Corpus* ("Supp. Mem.") at 2.) During this session, Bowman signed a Debriefing Agreement in which the Office of the District Attorney for New York County agreed not to offer as evidence in its case-in-chief any statement made by Bowman at the meeting except in a prosecution for false statements or perjury. Should Bowman be otherwise prosecuted, the Debriefing Agreement permitted the prosecution to "use statements made by [Bowman] at the meeting and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination should [Bowman] testify, or to rebut any evidence offered by or on behalf of [Bowman] in connection with the prosecution." (Docket Number ("Doc.") 41 at 3.)

### B.  The First and Second Trials

Bowman was subsequently tried three times; after the first two trials, the juries were unable to reach a verdict. Bowman testified in his first trial in January 2005, providing his account of the events that occurred on August 26, 2003. He admitted that he drove his cousin and others to the crime scene but denied any knowledge of their plan. During his testimony, Bowman also explained that he had participated in a proffer session before his trial and told the police, untruthfully, that he was not present at the scene of the crime. He explained this lie by saying—and proving—that his license was suspended and he feared a penalty for driving with a suspended license. He also testified that he knew a police officer had been shot in Harlem and

2

even though he did not know anything about the shooting, the police believed he did. Because he thought that the officers were not willing to accept his statements of innocence, he stopped talking.

During the defense summation in the first trial, Bowman's counsel sought to explain why Bowman did not tell the truth during the proffer session: "[H]e's admitted that he wasn't totally candid at the meeting with [the prosecutor] and he told you why. He knew this was a serious case and he from his experience was afraid that the police were going to try to railroad him . . . ." (First Trial Tr. ("T1") at 1881:5-9.) The prosecutor, during summation, made only two references to Bowman's dishonesty during the proffer session. The jury was unable to reach a verdict on any of the charges.

Bowman was retried in July 2005. During this second trial, Bowman did not testify but the prosecution introduced portions of his testimony from the first trial, including his testimony regarding both the events of August 26, 2003, and his proffer session. In addition, the prosecution introduced its cross-examination of Bowman during the first trial, including its questions of Bowman regarding his testimony about the proffer session. The prosecution then called Detective Stewart, who was present at the proffer session, to testify. Much of Detective Stewart's testimony regarding the proffer session was duplicative of Bowman's testimony at the first trial, which already had been admitted into evidence. The defense and prosecution summations were very similar to those in the first trial. The defense explained Bowman's lie during the proffer session, and the prosecution referred only once to Bowman's lies. Again, the jury was unable to reach a verdict on any of the charges.

### C.  The Third Trial

In May 2006, Bowman was tried for a third time. As in the second trial, Bowman did not

testify at his third trial. But the prosecution introduced portions of his testimony from the first

trial. At a pretrial proceeding, the prosecutor stated that he intended to read only Bowman's

testimony concerning the night in question; he did not intend to introduce his testimony

concerning the proffer session. For that purpose, he intended to rely solely on the testimony of

Detective Stewart. Bowman's counsel objected to the prosecutor's selective excerpting of

Bowman's prior testimony, stating to the trial judge:

> I checked the pages he indicated to me he was going to introduce, page such
> and such of this portion and that portion of that page, and I would object to the way in
> which he's modifying the transcript. And I think we have to take that up at some
> later time. . . . I'd like to amplify them not just put them in in the fashion that you
> do.

(Third Trial Tr. ("T3") at 12:22-13:6.)

In his opening statement, the prosecutor told the jury that "the evidence will show that

this defendant will lie when he believes he can get away with it." (T3 at 306:10-11.). Defense

counsel's objection was overruled. The prosecutor continued: "And you will hear that after the

defendant is told that nothing he says, he signs an agreement, nothing you say can be used

against you; if you say I did it I can't use that statement against you. He's told that. He's there

with his lawyer. And what does he say? He says I don't know anything. I wasn't there." (T3 at

306:18-24.) Again, defense counsel's objection was overruled.

Before Bowman's testimony was read, and before Detective Stewart was called to testify,

defense counsel again objected to the introduction of limited excerpts from Bowman's prior

testimony. Counsel objected to having Detective Stewart testify about the proffer session without

also introducing Bowman's testimony regarding the same. "I do not think it's fair for the

detective to get up and give a statement about the proffer session with Mr. Bowman having prior testimony on it under cross-examination which is intentionally left out." (T3 at 217:23-218:2.) When asked for the legal basis for his objection, counsel stated:

> I think, Judge, it's an incomplete statement in its form, and the subsequent testimony from the detective, I believe, Judge, on its own, when there is evidence from Mr. Bowman about that incident that involves statements about Detective Stewart, I believe, Judge, that that is an incomplete statement of that when Mr. Bowman himself had testified about it and it's in the testimony that's being offered.

(T3 at 218:7-16.) The judge overruled the objection.

Thereafter, portions of Bowman's testimony at the first trial were read to the jury. Only the excerpts concerning the incident in question were admitted.

The prosecution called Detective Stewart, who testified about a meeting that occurred on October 16, 2003, at the Manhattan District Attorney's office, with Bowman and his lawyer, the prosecutor, and two detectives. Detective Stewart testified that Bowman was advised that anything he said at the meeting would not be used against him. Detective Stewart further testified that Bowman denied driving his car at all because he had a suspended license and specifically denied driving his car on the night in question. Detective Stewart then testified that, after a break in the meeting and an opportunity to consult with his lawyer, Bowman admitted that he did occasionally drive his taxi on a suspended license, but denied driving on August 26 and 27, 2003. Unlike in the second trial, Detective Stewart's testimony was not duplicative of Bowman's testimony. Rather, the jury heard of Bowman's dishonesty during the proffer session only from Detective Stewart, and never learned of Bowman's explanation for why he initially had lied.

After Detective Stewart's testimony was completed, defense counsel renewed his application to have Bowman's prior trial testimony concerning the proffer session admitted into evidence. Counsel stated:

> I would ask for a mistrial on the grounds that the tenor of the redirect examination of . . . detective Stewart was to the effect of how was that meeting conducted, did people yell, did people get on chairs, did people slam books or whatever it was that was said. All information judge, that [Bowman] had testified directly contrary to when he took the stand. And [the prosecutor] knew that. For [the prosecutor] to put this detective in a position to make assertions of which [the prosecutor] knows that Mr. Bowman had testified within the same entity of the testimony that was introduced on the material issues in this case I believe, judge, is improper.

> Furthermore, there was in fact a queen-for-a-day agreement which basically indicated that anything he said could not be used against him. And the detective's version of it . . . is that Mr. Bowman did not tell the truth in some material way at that meeting. That's why detective Stewart was able to come in here and testify to that fact.

> As we know, Mr. Bowman did testify under oath at that prior trial. Those minutes are in evidence before this jury. And he admitted to being present. He admitted to that these individuals were in his vehicle. But he denied participating in a crime.

> And I believe for this jury to be left with the impression that they have that Mr. Bowman went down to the proffer, theoretically under immunity, and that he then – the testimony about that proffer from detective Stewart is being offered to show that he lied when Mr. Bowman later testified under oath about a queen-for-a-day meeting in which he was supposed to have been immune, I believe, judge, is improper.

> For this record to be complete . . . I believe puts Mr. Bowman in an unfair position in that he either has to waive his Fifth Amendment right to testify and now get on the stand to explain that when there had already been prior testimony about that. [The prosecutor] knew that. And detective Stewart knew that.

(T3 at 891:17-893:16.) The trial court recognized that counsel raised "a number of reasons" for seeking to introduce Bowman's testimony regarding the proffer. (T3 at 893:25-894:1.) The prosecutor addressed the inadmissibility of the prior testimony by the defendant (because it would be hearsay if offered by him but admissible as an admission if offered by the prosecution). He then further addressed the completeness argument, stating:

> the testimony of the defendant[] at a prior proceeding is a completely separate statement admission than the statement that was made October 16, 2003. So the People put in the substance of his statement from October 16, 2003. The completeness doctrine does not apply and does not require any other statement that was made by the defendant related to that.

6

(T3 at 895:13-20.) He did not address the propriety of introducing immunized statements. The trial court denied Bowman's request without discussion.

In summation, Bowman's counsel raised the proffer session, characterizing it as proof of Bowman's consistent and truthful claims of innocence:

> And, yes, he's involved, right? He is because he took them there. And that's the fact he never denied it. And he never denied it under oath. And he went down to these district attorneys all for the purposes of telling them that. . . . he went down in October. And all they wanted him to do down there to get his pass was admit his participation, admit everybody else's participation, and get up on some witness stand later and tell everybody about it whether it's true or not.

> He didn't do it, selling himself out, getting on the witness stand and ratting people out or ratting himself out, which he would not do. Because even though he took them there, he did not participate and did not know it was going to happen.

(T3 at 1106:18-1107:16.) Because Bowman's prior testimony about why he first lied at the proffer session had been excluded, Bowman's counsel could not address Bowman's basis for his initial denial that he was even driving his car around the time of the incident.

During the prosecutor's summation, he discussed Bowman's proffer statements and repeatedly—at least 12 times— described him as having lied to the detectives and prosecutor by denying that he was even driving his taxi at this time. (For example, "This defendant walked into the Manhattan District Attorney's office with his lawyer, sat down at a meeting, signed the debriefing agreement, looked everyone in the eye and lied." (T3 at 1219:10-14.); "This defendant came to that meeting and he said I was not driving. I was not there. Nothing happened for me to know about because I was not there." (T3 at 1219:21-23.).)

Following summations, Bowman's counsel again moved for a mistrial:

> Judge, I just wanted to make an application at this time, very briefly, for a mistrial based upon [the prosecutor's] summation. There came a point during the trial I had attempted to put in certain portions of Mr. Bowman's testimony under the doctrine of completeness because [the prosecutor] sought certain portions of that

7

testimony. I had attempted to introduce some of my own portions of that testimony, which you denied.

(T3 at 1245:12-21.) The court again denied counsel's request for a mistrial.

The third trial jury found Bowman guilty. Following the verdict, Bowman's counsel spoke with the jurors. Apparently, four of the 12 jurors stated that they found Bowman guilty because they did not understand why he lied during the proffer session by denying that he was even driving his car at the time of the incident.

## II.     Procedural Background

### A.  Direct Appeal

Bowman, through counsel, appealed his conviction to the New York Appellate Division, First Department, asserting four grounds: (1) the evidence was legally insufficient to support the conviction; (2) the verdict was against the weight of the evidence; (3) he was denied his Sixth Amendment constitutional right to a fair trial and due process by the admission at trial of his immunized statement and by the court allowing Captain Girven to be recalled to testify; and (4) the sentence was harsh and excessive.

In a supplemental *pro se* brief, Bowman asserted over 20 grounds of appeal. Point nine of his brief is relevant to Bowman's two remaining claims for *habeas* relief. Bowman argued that the trial court erred in permitting the prosecutor to introduce Bowman's immunized statements from his proffer session while denying Bowman's request to introduce the entirety of his testimony from his first trial. Bowman expanded on the completeness point for several pages in his brief, citing to New York case law and the Sixth and Fourteenth Amendments to the United States Constitution.

On October 26, 2010, the Appellate Division affirmed Bowman's conviction. The court determined that "[b]y failing to object, or by objecting on different grounds from those raised on

8

appeal, defendant failed to preserve his current objections to the admission of his testimony from a prior trial, [and] statements from his proffer session . . . ." <u>People v. Bowman</u>, 77 A.D.3d 559, 559 (1st Dep't 2010). The court declined to review those claims in the interest of justice. <u>Id.</u> The court, in an alternative holding, rejected each of the claims on the merits, concluding that the prior testimony had been properly admitted as an admission and even if the proffer statements had erroneously been introduced during the prosecution's case-in-chief, it was harmless error. <u>Id.</u> at 559-60. The court concluded by stating: "We have considered and rejected defendant's pro se claims." <u>Id.</u> at 560.

### B. Leave Application

On November 9, 2010, Bowman submitted a *pro se* application for leave to appeal to the New York Court of Appeals, and then filed a supplemental letter on December 13, 2010. Bowman raised both the completeness and the immunized-statement issues in his November 9, 2010 letter, seeking leave on "whether the trial judge abuse[d] its discretion that allow the prosecutor to introduce a Queen of the day statement out [of] the mouth [of] police officer that is inculpatory while denying Mr. Bowman the opportunity to introduce the exculpatory portion of that same statement under the completeness doctrine . . . ." (Ex. E at 3.) Bowman again expanded on the completeness point for several pages in his letter, citing to New York case law, the Fifth and Fourteenth Amendments to the United States Constitution, and federal cases on the rule of completeness. (<u>Id.</u> at 17-21.)

On December 15, 2010, Bowman's counsel submitted a leave application. Bowman's counsel did not raise the completeness issue in her leave letter, but did clearly articulate that Bowman sought review of his conviction based on the improper admission of immunized statements: "The Appellate Division erred by not reversing the jury verdict because the trial

court abused its discretion thereby denying the Defendant-Appellant a fair trial since the trial court inappropriately admitted into evidence statements from the Defendant-Appellant's proffer session in the People's case in chief." (Ex. G at 1.) Though counsel did not cite any constitutional or federal provisions in the letter, she did note that the appellate division briefs had been received by the court. These briefs specifically identified this issue as a violation of Bowman's Sixth Amendment right to a fair trial and due process.

Bowman's leave application was denied on March 7, 2011. On May 27, 2011, Bowman sought a writ of *certiorari* from the United States Supreme Court, which was denied on October 3, 2011.

### C.  Federal *Habeas Corpus* Petition

 On May 17, 2012, Bowman filed a *pro se* petition for a writ of *habeas corpus*. On July 23, 2012, the case was referred to a magistrate judge for a report and recommendation. On November 9, 2012, the case was reassigned to my docket. On September 19, 2013, the Court issued a Report and Recommendation denying Bowman's *habeas* petition on seven of the eight grounds raised and appointed counsel from the Criminal Justice Act panel to brief the eighth issue, Bowman's completeness claim. On October 2, 2013, counsel appeared on behalf of Bowman. On December 4, 2013, the Court granted Bowman's motion to amend his *habeas* petition to include an additional ground for relief: his immunized-statements claim. On January 17, 2014, Bowman filed a supplemental memorandum of law on these two issues, and on February 18, 2014, the government responded.

**DISCUSSION**

The Court incorporates its discussion of the applicable legal standards in the September 19, 2013 Report and Recommendation. Only those legal propositions essential to deciding the remaining claims are discussed in this supplemental Report.

**I.      Exhaustion**

Before a federal court may review a petition for a writ of *habeas corpus*, a petitioner must exhaust all state-provided remedies. 28 U.S.C. § 2254(b)(1)(A). See also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (to exhaust a claim, a petitioner must "invoke[] one complete round of the State's established appellate review process" before bringing the same claim in federal court). A claim is deemed exhausted if the petitioner: (1) fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (2) presented his claim to the highest state court that could hear his claim. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at 844-48.

It is undisputed that the two remaining *habeas* claims are exhausted. Bowman fairly presented both his arguments in constitutional terms to the Appellate Division and the New York Court of Appeals in either his counseled briefs or his *pro se* supplemental briefs.

**II.     Procedural Default**

Even if a claim is exhausted, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Beard v. Kindler, 558 U.S. 53, 55 (2009) (internal citation and quotations marks omitted). A defendant whose claim is rejected on appeal in a state court for failure to comply with a state procedural rule may be precluded from raising that claim in a federal *habeas corpus* petition. Coleman v. Thompson, 501 U.S. 722, 729-

11

30 (1991). This is true even when the petitioner presents "a colorable federal constitutional claim

. . . ." Fernandez v. Smith, 558 F. Supp. 2d 480, 489 (S.D.N.Y. 2008).

"[I]n order for federal habeas review to be procedurally barred, a state court must actually

have relied on a procedural bar as an independent basis for its disposition of the case, and the

state court's reliance on state law must be unambiguous and clear from the face of the opinion."

Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (Sotomayor, J.). See also Fama v. Comm'r

of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). Courts in this circuit "apply a presumption

against finding a state procedural bar and 'ask not what we think the state court actually might

have intended but whether the state court plainly stated its intention.'" Galarza, 252 F.3d at 637

(quoting Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000)). See also DeBerry v. Portuondo,

403 F.3d 57, 64 (2d Cir. 2005); Cox v. Miller, 296 F.3d 89, 100 (2d Cir. 2002) (federal *habeas*

review is available unless there is a "clear[] and express[] state[ment] that . . . [the court's]

rejection of [the petitioner's] federal claims rested on a state-law procedural bar . . . [and]

[a]bsent a 'plain statement,' we presume that it did not"). The state procedural rule cannot be

"interwoven with" federal law, Coleman, 501 U.S. at 733, and must be "firmly established and

regularly followed by the state . . . ." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999).

Respondent contends that both claims are procedurally barred from consideration by this

Court because the state court decided the claims on an independent and adequate state ground.

Respondent did not allege procedural default on the completeness claim in his original

opposition to Bowman's petition, and, in the September 19, 2013 Report, the Court concluded

that the claim was exhausted and did not address any potential procedural bars. The Court now

considers whether Bowman's remaining claims are procedurally barred because they were

decided in state court on an independent and adequate state law ground.

12

Despite Respondent's newly raised argument otherwise, no genuine ambiguity can be read into the Appellate Division's holding with respect to Bowman's completeness claim, raised to the Appellate Division *only* in Bowman's *pro se* submission. The court stated simply that it had "considered and rejected defendant's pro se claims." Bowman, 77 A.D.3d at 560. The Appellate Division made no mention of a procedural default as a ground to deny Bowman relief on his completeness claim. (This is consistent with any fair reading of the trial transcript, where counsel repeatedly objected to introduction of limited excerpts from Bowman's testimony at his first trial.) Respondent urges the Court to find a procedural bar where the state court declined to do so. This is not only improper but unwarranted. The Court finds no procedural bar to consideration of Bowman's completeness claim.

By contrast, the Appellate Division unambiguously relied upon New York's contemporaneous objection rule to bar consideration of Bowman's claim concerning the use of his immunized statement. See Bowman, 77 A.D.3d at 559 ("[b]y failing to object, or by objecting on different grounds from those raised on appeal, defendant failed to preserve his current objections to . . . statements from his proffer session . . . .").[1]

New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2). This rule has been interpreted by New York courts to require, "at the very least, that any matter which a party wishes" to preserve for appellate review

---

[1] Counsel also raised an argument that none of Bowman's prior trial testimony should have been *admitted*. The Appellate Division found that that argument also had not been preserved; but that issue is unquestionably different than the one presented by Bowman in his *pro se* submission (and raised in his *habeas* petition) that concerned the *exclusion* of portions of his prior trial testimony.

be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." People v. Luperon, 85 N.Y.2d 71, 78 (1995); see also People v. Hicks, 6 N.Y.3d 737, 739 (2005). The purpose of this rule is to apprise the trial court of the nature and scope of the contested matter so that the court may address it in a timely fashion. See Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007). To preserve an issue for appeal, the defendant must specifically address the alleged error: a general objection does not suffice. See id. (citing People v. Gray, 86 N.Y.2d 10, 19-20 (1995)).

Bowman argues that "a review of the transcript indicates that Mr. Bowman's trial counsel did object to the admission of the testimony of Detective Stewart" and therefore "the procedural bar doctrine is not applicable." (Pet. Supp. Br. at 28, 29). This Court, however, has "no authority to question the state's interpretation of its own procedural law under these circumstances." Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011). See Cotto v. Herbert, 331 F.3d 217, 247 (2d Cir. 2003) ("Our task is not to determine whether [the state court] ruling was correct, but to determine its adequacy to preclude federal habeas review."). Accordingly, the Appellate Division's express reliance on the state's contemporaneous objection rule in rejecting Bowman's challenge to the use of his immunized statements is an "independent" state law ground for that decision. See Garcia, 188 F.3d at 77; cf. Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) ("[P]rocedural default in the state court will . . . bar federal habeas review when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." (internal quotation marks omitted)).[2]

---

[2] This is true even though the Appellate Division addressed the merits of the argument as an alternative basis for affirming the conviction. Garcia, 188 F.3d at 77 ("There is no question that the Appellate Division's explicit invocation of the procedural bar constitutes an 'independent' state ground, even though the court spoke to the merits of Garcia's claim in an alternative holding.") (internal citation omitted). See also Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).

Thus, the Court is left to determine whether the application of New York's contemporaneous objection rule to preclude *habeas* review of Bowman's immunized-statements claim is "adequate." "Adequacy in this context presents a question of federal law and requires evaluation of 'the state interest in a procedural rule against the circumstances of a particular case.'" Whitley, 642 F.3d at 286 (quoting Lee v. Kemna, 534 U.S. 376, 386-87 (2002)). As a general rule, a state ground for decision will be deemed adequate to preclude *habeas* review of a federal claim if it stems from violation of a "rule that is firmly established and regularly followed by the state in question." Garcia, 188 F.3d at 77 (internal quotation marks omitted). New York's preservation rule is such an "established and regularly followed" rule. See People v. Hawkins, 11 N.Y.3d 484, 492 (2008) (noting the mandatory nature of New York's preservation rule); Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007) (New York's contemporaneous objection rule is an adequate ground to preclude *habeas* relief); Taylor v. Harris, 640 F.2d 1, 1-2 (2d Cir. 1981); see also Osborne v. Ohio, 495 U.S. 103, 123 (1990) ("The state [contemporaneous objection rule] . . . serves the State's important interest in ensuring that counsel do their part in preventing trial courts from" committing error at trial).

The Supreme Court has recognized, however, that there are those "exceptional cases" in which application of an otherwise sound state rule is so "exorbitant" as to render it "inadequate to stop consideration of a federal question." Lee, 534 U.S. at 376. Three "guideposts" inform the analysis of whether the case at hand qualifies as such an exceptional case: (1) whether the trial court actually relied on the rule; (2) whether New York case law indicates that compliance with the rule is required under these specific circumstances; and (3) whether the petitioner substantially complied with the rule. Whitley, 642 F.3d at 287-88. See Cotto, 331 F.3d at 240-41. "[T]he adequacy of a state procedural bar is determined with reference to the 'particular

application' of the rule; it is not enough that the rule 'generally serves a legitimate state interest.'" Id. at 240 (citing Lee, 534 U.S. at 387). Therefore, the Court must not only determine whether the state rule is firmly established and regularly followed, but also whether the "application of that rule in this case would be exorbitant." Garvey, 485 F.3d at 714.

There is no basis for deeming "exorbitant" the application of New York's contemporaneous objection rule to bar consideration of Bowman's immunized-statements claim. Rather, the Appellate Division's use of this rule "is well within the parameters of its routine and generally unquestionable application to bar review of unpreserved objections to trial testimony . . . ." Whitley, 642 F.3d at 288 (citing state court cases barring review of unpreserved objections to trial testimony and the admission of particular evidence). And, as stated previously, compliance with the contemporaneous objection rule "serves a legitimate governmental interest in this case, that is to say, the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error." Garvey, 485 F.3d at 720. Thus, its application here cannot be deemed "unyielding" or in "disser[vice to] any perceivable interest." Lee, 534 U.S. at 380.

Consideration of the three guideposts identified in Lee, and further developed in this circuit in Cotto, does not change this analysis. Only the third consideration is potentially relevant. See Clark v. Perez, 510 F.3d 382, 391 n.4 (2d Cir. 2008) ("The first [Cotto] guidepost has no bearing" where "the failure altogether to raise an issue cannot be 'actually relied on' because no court has been notified the issue even exists."), and Richardson, 497 F.3d at 218 (As to the second guidepost, New York's preservation rule "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of

the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error.") (quoting People v. Luperon, 85 N.Y.2d at 78).

The third consideration turns on whether the petitioner "substantially complied" with the state rule "given the realities of trial." Lee, 534 U.S. at 382. To substantially comply under New York's contemporaneous objection rule, the objection must be "'interjected at the fact-finding level in such a manner and at such a time as to fairly apprise the court and the opposing party of the nature and scope of the matter contested.'" Garcia, 188 F.3d at 78 (quoting People v. Jones, 81 A.D.2d 22, 41-42 (2d Dep't 1981)). General or related objections are insufficient because the rule demands that the issue be identified by trial counsel "with sufficient specificity" so as "to enable the trial court to respond." Green, 414 F.3d at 294 (citing state authority).

Here, it cannot be said that counsel substantially complied. Although counsel drew the court's attention to the use of Bowman's immunized statement, he never raised a specific objection to its admission sufficient to apprise the court of any due process concerns (much less that the prosecution was breaching its agreement). Counsel stated:

> there was in fact a queen-for-a-day agreement which basically indicated that anything he said could not be used against him. And the detective's version of it . . . is that Mr. Bowman did not tell the truth in some material way at that meeting. That's why detective Stewart was able to come in here and testify to that fact."

And later, during the same argument, concluded:

> And I believe for this jury to be left with the impression that they have that Mr. Bowman went down to the proffer, theoretically under immunity, and that he then – the testimony about that proffer from detective Stewart is being offered to show that he lied when Mr. Bowman later testified under oath about a queen-for-a-day meeting in which he was supposed to have been immune, I believe, judge, is improper.

(T3 at 891:17-893:16.). Although a different court might have concluded that counsel sufficiently lodged his objections to preserve an issue on appeal concerning the improper use of

the immunized statements, the Appellate Division here did not. This court has no power to revisit

that determination. And our "substantial compliance" review under the third Cotto guidepost

cannot open a backdoor to allow a federal court to impose its view of the appropriate application

by the state court of its own procedural rules. Accordingly, because there is nothing

"exceptional," "extraordinary," or "unique," Lee, 534 U.S. at 376, 382, about the facts of this

case that would alter this analysis, Bowman's claim regarding the improper use of his

immunized statement is procedurally barred.

      A petitioner may, however, overcome a procedural bar by demonstrating either cause for

the default and resultant prejudice, or that the failure to consider the federal *habeas* claim will

result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 749-50; see also

DiSimone v. Phillips, 461 F.3d 181, 190 (2d Cir. 2006) ("Where a petitioner has procedurally

defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if

the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually

innocent.'" (brackets omitted) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)).

      Bowman argues that cause for the procedural default is established based on the

ineffective assistance of his trial counsel for failing to preserve his immunized-statement claim.

To establish cause based on a claim of ineffective assistance of counsel, Bowman must

**demonstrate that** his counsel's performance was objectively unreasonable, maintaining that any

errors were "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the

Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984).

      Bowman contends that counsel's failure to object clearly to the admission of the

immunized proffer statements cannot be characterized as a strategic decision; rather, it is the

result of neglect. Even if counsel's failure to preserve the immunized-statement claims was the result of neglect, such conduct does not necessarily rise to the level of a constitutional violation.

> [T]he question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead we think the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

See Murray v. Carrier, 477 U.S. 478, 488 (1986). Bowman does not identify, and the Court does not find, any external factor that impeded counsel's ability to comply with the procedural rule.

Furthermore, the Court finds that the record does not indicate that counsel's performance was "objectively unreasonable" under Strickland. To assess counsel's performance, the Court must assess his conduct "considering all the circumstances." Strickland, 466 U.S. at 688. Bowman's trial counsel generally represented Bowman well. He repeatedly objected to the incomplete admission of Bowman's trial testimony, raised concerns about the introduction of the immunized statements, and vigorously cross-examined the prosecution's witnesses. Given counsel's overall effective representation, the Court cannot conclude that counsel's error in failing to preserve his immunized-statement claim resulted in a violation of Bowman's Sixth Amendment right to effective counsel. See e.g., Zayas v. Ercole, 08 Civ. 1037 (CBA)(RLM), 2009 WL 6338395, at *12 (E.D.N.Y. Nov. 9, 2009), rep. and rec. adopted in part by 2010 WL 1438113 (Apr. 8, 2010) ("Since petitioner's trial counsel's performance was, in the aggregate, reasonable . . . petitioner cannot establish cause for his failure to preserve the claim.").

Nor can Bowman demonstrate that this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of someone who is actually innocent . . . ."

19

Murray, 477 U.S. at 496. To establish actual innocence, Bowman must show that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" based upon "*new reliable evidence* – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial . . . ." House v. Bell, 547 U.S. 518, 537 (2006) (citations omitted) (emphasis supplied); Schlup v. Delo, 513 U.S. 298, 324 (1995). While Bowman consistently maintained his innocence throughout his three trials and the appellate process, Bowman has offered no *new* evidence of his innocence, and therefore, cannot establish a fundamental miscarriage of justice. Because Bowman has failed to show cause and prejudice or a fundamental miscarriage of justice, his claim regarding the use of his immunized statements is procedurally barred. Therefore, this Court cannot reach the merits.

**III.    Merits Review**

**A.    Legal Standard**

The Court turns to whether the trial court erred in denying admission of excerpts of Bowman's testimony from the first trial concerning the proffer session in violation of New York's rule of completeness, and whether this error deprived him of a fundamentally fair trial. Errors of state law do not trigger federal *habeas* relief unless they rise to the level of a constitutional violation. See generally Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Although not cited by the parties, a recent decision from the Court of Appeals establishes the legal framework for the Court's analysis. See Evans v. Fischer, 712 F.3d 125 (2d Cir. 2013), cert. denied sub nom., Evans v. Heath, 134 S. Ct. 238 (2013). In Evans, the Court of Appeals reversed a district court's granting of a *habeas* petition, finding that the state appellate court's

determination that an evidentiary error in admitting hearsay testimony was harmless was not an unreasonable application of federal due process law. The Court found that there was no Supreme Court case "that clearly establishes that the admission of evidence that improperly bolsters a prosecution witness's testimony constitutes a violation of the Fourteenth Amendment." Id. at 133.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") authorizes a district court to grant *habeas* relief based on an issue adjudicated on the merits in state court only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

Here, the Court considers whether the state court's decision to exclude portions of Bowman's prior trial testimony concerning the proffer session involved an "unreasonable application" of clearly established federal law. A state court decision involves an "unreasonable application" of clearly established federal law if the court identified the legal rule set forth in governing Supreme Court cases, but unreasonably applied the rule to the facts of the case. Williams v. Taylor, 529 U.S. 362, 413 (2000). A federal court may grant *habeas* relief only when the state court decision, as it pertains to any issue of federal law, was "objectively unreasonable" in light of relevant precedent; thus, in construing and applying federal law, even erroneous state court decisions, if otherwise reasonable, will survive *habeas* review. Id. at 409-13; see also Jimenez v. Walker, 458 F.3d 130, 147 (2d Cir. 2006) ("[W]e must conclude not only that the trial court's exclusion of . . . evidence was unconstitutional but that it was so plainly unconstitutional that it was objectively unreasonable for the Appellate Division to conclude otherwise."). Thus

21

courts look for "[s]ome increment of incorrectness beyond error," but "that the increment need

not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark

as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)

(internal quotations omitted). "[W]hen a state court fails to articulate the rationale underlying its

rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will

focus its review on whether the state court's ultimate decision was an 'unreasonable application'

of clearly established Supreme Court precedent." Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d

Cir. 2001).

Bowman faces a "doubly difficult challenge" because his constitutional claims rest on a

state-law evidentiary error. Evans, 712 F.3d at 133. "[T]o establish that an erroneous application

of state rules of evidence violates the federal guarantee of due process, [a petitioner] must also

demonstrate that the state court's erroneous conclusions about New York evidence law were so

egregious as to implicate the Fourteenth Amendment's guarantee of due process." Id. The

guarantee of "fundamental fairness," is a principle that the Supreme Court has "defined . . . very

narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990). Thus,

> [t]he combination of the Supreme Court's "fundamental fairness" cases and the
> limited habeas jurisdiction granted by AEDPA means that [a petitioner] must
> demonstrate that the effect of the [evidentiary error] was so prejudicial to his
> defense that he was deprived of due process *and* he must identify a Supreme
> Court case that clearly establishes that the [evidentiary error] constitutes a
> violation of the Fourteenth Amendment.

Evans, 712 F.3d at 133 (emphasis in original). See also Perez v. Phillips, 210 F. App'x 55, 55

(2d Cir. 2006) ("Habeas relief is available to remedy a state court's evidentiary error under state

law 'if the omitted evidence creates a reasonable doubt that did not otherwise exist.'" (quoting

Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988))).

22

**B.     Application**

Respondent urges the Court to take an exceedingly narrow view of what constitutes clearly established Supreme Court law for purposes of *habeas* review under AEDPA's "unreasonable application of" federal law prong. He argues that because no Supreme Court case holds that exclusion of testimony in violation of the completeness doctrine violates a defendant's due process rights, he is without remedy. The Court declines to so limit the opportunity for *habeas* relief to cases that, essentially, would be successful only under AEDPA's "contrary to" prong. See e.g., Williams, 529 U.S. at 405 (a petitioner may establish that a state court's decision was "contrary to" federal law by demonstrating either (1) that the state court reached a decision of law that directly contradicts a holding of the Supreme Court, or (2) that when presented with "facts that are materially indistinguishable from a relevant Supreme Court precedent," the state court arrived at a result opposite to the one reached by the Supreme Court). Rather, under the "unreasonable application of" prong, the Supreme Court instructs district courts to identify the "governing legal principle" and determine whether the state court "unreasonably applie[d] that principle to the facts" of the case before it. Id. at 413. Accordingly, the Court must determine whether the state court's decision involved an unreasonable application of a governing legal principle clearly established by the Supreme Court.

"The right to a fair trial, guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment, imposes on States certain duties consistent with their sovereign obligation to ensure 'that justice shall be done' in all criminal prosecutions." Cone v. Bell, 556 U.S. 449, 451 (2009) (quoting United States v. Agurs, 427 U.S. 97, 111 (1976)). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and

23

to call witnesses in one's own behalf have long been recognized as essential to due process." Chambers v. Mississippi, 410 U.S. 284, 294 (1973). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." Id. at 302. See also Crane v. Kentucky, 476 U.S. 683, 690 (1986) (it is well-established that a criminal defendant has a constitutional right to "a meaningful opportunity to present a complete defense"); Taylor v. Illinois, 484 U.S. 400, 408 (1988). Accordingly, "the hearsay rule may not be applied mechanistically to defeat the ends of justice." Chambers, 410 U.S. at 302. See also Holmes v. South Carolina, 547 U.S. 319, 326 (2006) ("[T]he Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote . . . ."); Wade v. Mantello, 333 F.3d 51, 57 (2d Cir. 2003) (recognizing that the Supreme Court "has found unconstitutional the rigid application of state evidentiary rules prohibiting presentation" of exculpatory evidence).

In Chambers, the Supreme Court held that certain hearsay statements – even though concededly inadmissible under Mississippi law – should have been admitted because they bore substantial assurances of trustworthiness and were within the basic rationale for an exception to the hearsay rule, and their exclusion deprived the defendant of his right under the due process clause to present a defense. Id. at 302. In Evans, the Court of Appeals described Chambers as standing for the legal principle "that in some cases the *exclusion* of hearsay proffered by a *defendant* in a *correct* application of state rules of evidence can violate the guarantee of due process by denying a defendant his right to present witnesses in his own defense." Evans, 712 F.3d at 134 (emphasis in original) (citing Chambers, 410 U.S. at 302). The Court of Appeals has relied on Chambers and granted *habeas* relief on the basis of excluded testimony. See Justice v. Hoke, 90 F.3d 43, 48 (2d Cir. 1996) (granting *habeas* relief where "the excluded testimony could

have raised a reasonable doubt that did not otherwise exist"); Rosario, 839 F.2d at 924 (finding

that the constitutional principle articulated in Chambers "includes the right under certain

circumstances, to place before the jury secondary forms of evidence, such as hearsay or, as here,

prior testimony"). See also Jones v. Stinson, 229 F.3d 112, 119-20 (2d Cir. 2000) (denying

habeas relief, but finding it to be a "closer question" whether the exclusion of evidence was

objectively unreasonable "in light of Supreme Court precedent that the opportunity to present a

defense is one of the constitutional requirements of a fair trial," citing Chambers).

     Accordingly, the Supreme Court has clearly established in Chambers that a petitioner's

fundamental right to a fair trial can be denied where hearsay testimony for which there is

considerable assurance of reliability is excluded at the petitioner's criminal trial. Under AEDPA,

the Court next considers whether the Appellate Division's decision was an unreasonable

application of this clearly established due process law. In addition, because habeas relief is

sought based on state-law evidentiary errors, the Court must also determine whether the effect of

the exclusion was "so prejudicial to [Bowman's] defense that he was deprived of due process . . .

." Evans, 712 F.3d at 133. Here, the Appellate Division denied Bowman's challenge on the

merits but without discussion. Accordingly, the question whether that court unreasonably applied

clearly established law and whether Bowman's trial was fundamentally unfair can be considered

together; for if the decision to deny admission of the testimony was an unreasonable application

of Supreme Court due process law, it follows that the trial was constitutionally defective.

     To determine whether the error was of constitutional magnitude, the Court considers "'1)

whether the exclusion was error under state law, and 2) whether the error amounted to the denial

of the constitutional right to a fundamentally fair trial.'" Perez, 210 F. App'x at 57 (quoting Dey

v. Scully, 952 F. Supp. 957, 969 (E.D.N.Y. 1997)).

### 1. Evidentiary Error

Bowman argued to the Appellate Division, through his *pro se* submission, that the exclusion of his prior testimony concerning the proffer session violated New York's rule of completeness.[3] The Appellate Division "considered and rejected defendant's pro se claims." Bowman, 77 A.D.3d at 560.

New York's rule of completeness "is founded upon obvious equity and justice. . . . and in the search for truth through the examination of witnesses, courts do not countenance partial statements of facts by witnesses." Nay v. Curley, 113 N.Y. 575, 578-79 (1889). See also Rouse v. Whited, 25 N.Y. 170, 177 (1862) ("All statements made in a conversation, in relation to the same subject or matter, are to be supposed to have been intended to explain or qualify each other, and therefore the plainest principles of equity require, that if one of the statements is to be used against the party, all the other statements tending to explain it or to qualify this use, should be shown and considered in connection with it."); People v. Gallo, 12 N.Y.2d 12, 15-16 (1962) ("Under the circumstances, fairness required that defendant's counsel be allowed to read into the

---

[3] Under Chambers, even a correct evidentiary ruling can form the basis of a due process violation. Under circuit law, however, courts tend to focus first on whether there was an evidentiary error before proceeding to a constitutional analysis. It is clear, however, that a finding of evidentiary error is not necessary in light of Chambers. See also Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006) (where an evidentiary ruling is correct, courts "consider whether the evidentiary rule is "arbitrary or disproportionate to the purposes [it is] designed to serve." (quoting United States v. Scheffer, 523 U.S. 303, 308 (1998) (internal citations omitted))). A correctly applied state evidentiary rule is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." Scheffer, 523 U.S. at 308. Because I find that there was an evidentiary error, this analysis is included in my Report. Under Chambers, however, a petitioner's right to a fair trial can be violated by a correct, but "mechanistically" applied, evidentiary ruling. Here, if the Court were to find that the exclusion of Bowman's prior trial testimony on his proffer session did not violate the rule of completeness, I would recommend that the application of the hearsay rule to exclude this testimony was disproportionate to the purpose that rule was designed to serve, and that the exclusion of Bowman's hearsay statements infringed upon a weighty interest of the accused.

record those parts of the statement in which defendant denied his guilt."). <u>See also</u> Prince,

Richardson on Evidence (11th ed. 1995) § 1-102 ("In fairness, a party offering part of the

contents of a prior statement, whether of an adversary or of a witness, may be required to

introduce all relevant parts of the statement, including those favoring the adversary, to avoid

misleading the trier of fact about the statement's tenor."). The rule of completeness is violated

when hearsay testimony is excluded that is "explanatory of the admitted portion of the

statement." <u>People v. Walker</u>, 285 A.D.2d 364, 365 (1st Dep't 2001). <u>See also</u> <u>People v.</u>

<u>Hubrecht</u>, 2 A.D.3d 289, 290 (1st Dep't 2003) (excluded hearsay statements did not violate rule

of completeness because the "statements were made to different persons in different settings and

could not be viewed as a single continuous narrative").

  At the third trial, Detective Stewart testified about Bowman's immunized statements

made during a proffer session where Bowman denied driving that night. These statements were

inconsistent with Bowman's first trial testimony where he admitted driving but denied

knowledge of the criminal plan. Bowman, however, testified in his first trial about his

inconsistent statements and explained why he had lied during the proffer session. At the second

trial, his trial testimony about the proffer session was admitted – including the explanatory

statements. At the third trial, however, the prosecution sought to admit only limited portions of

Bowman's trial testimony, and the trial court ruled that Bowman's hearsay statements that

explained the inconsistency could not be admitted under the rule of completeness.[4] This

evidentiary ruling allowed the prosecutor to exploit the absence of an explanation and gave the

appearance to the jury that the defendant lied because he was guilty of the crime for which he

---

[4] The Court assumes that the trial judge excluded the testimony sought to be introduced by Bowman on
hearsay grounds, though the judge never articulated a reason for the ruling.

was charged and not for some other reason. The trial court's decision to exclude portions of Bowman's prior trial testimony materially affected the "tenor" of the trial by keeping reliable evidence from the jury.[5] See also People v. Robinson, 89 N.Y.2d 648 (1997) (exclusion of hearsay testimony that was material, exculpatory, and had sufficient indicia of reliability was reversible error).

Respondent argues that the completeness doctrine was not violated because Bowman's "complete" testimony about the underlying incident was admitted and there was no obligation on the trial court to admit also the testimony about the proffer session, which respondent characterizes as an entirely different topic. Respondent contends that Bowman's testimony about the underlying crime was not incomplete – and the jury was not left with a misunderstanding about *that portion* of the testimony – by the exclusion of Bowman's testimony about the proffer session. But Bowman's complete statement is his full testimony from the first trial. That continuous narrative cannot be dissected as though it were a series of different statements made to different people such that the completeness rule would not apply. See Hubrecht, 2 A.D.3d at 290. It is one statement, and by selectively excluding portions of it, the prosecution was able to

---

[5] Bowman's explanation for why he lied at the proffer was sufficiently reliable for admission. Although technically hearsay when offered by the defense, the proffer session testimony was given under oath and corroborated by unchallenged documentary evidence, and Bowman was rigorously cross-examined on this topic by the prosecution at the first trial. There is also no argument that Bowman's testimony would have been prejudicial or might have confused the jury. (Indeed, this testimony was given in the first trial and admitted in the second trial without objection.) Thus, the excluded testimony was "originally made and subsequently offered at trial under circumstances that provided considerable assurance of . . . reliability." Chambers, 410 U.S. at 300. In this regard, this case is distinguishable from other cases where hearsay statements were excluded and those evidentiary rulings were held not to be an unreasonable application of clearly established Supreme Court law. See Hawkins, 460 F.3d at 245-46 (finding no constitutional violation where it was unknown whether excluded hearsay statements would have been exculpatory); Wade, 333 F.3d at 61 (finding no constitutional violation where excluded hearsay statements about a third party who had animus toward the victim offered only "inferences without a sufficient factual predicate" and therefore might mislead the jury).

mislead the jury by omitting exculpatory statements Bowman gave at trial about why he lied during the proffer session. See People v. Torres, 205 A.D.2d  350, 350 (1st Dep't 1994) (trial court erred by admitting inculpatory portions of defendant's post-arrest statement but excluding portions that concerned a topic other than guilt – whether he was beaten by the police when arrested 18 hours earlier – where prosecution was permitted to introduce evidence of a struggle between defendant and police). Because Bowman's full trial testimony was one continuous statement, the Court considers whether excluding a portion of that statement was error.

The excluded portion of Bowman's trial testimony was plainly relevant to specific elements of the prosecution's case and would have contextualized the immunized statements introduced through Detective Stewart. The admitted excerpts from the trial testimony established that Bowman acknowledged his presence at the scene of the crime but denied his involvement in the crime. Detective Stewart was called to testify only to challenge Bowman's credibility. Thus, the omitted testimony would have provided a direct response to the impeachment evidence offered by Detective Stewart.

The prosecutor's obvious reason for excluding Bowman's proffer testimony was to exploit a credibility handicap that Bowman plainly overcame in the first two trials. Indeed, so sufficient was Bowman's explanation for his initial false statements at the proffer session, that the prosecutor hardly mentioned Bowman's false statements during the first two trials. It was only at the third trial, when Bowman was denied the opportunity to introduce his explanatory statements, that the prosecutor focused the jury's attention on the inconsistency and repeatedly (at least 12 times) called Bowman a liar who could not be trusted. Thus, the prosecutor was able to capitalize on the court's ruling by drawing the jury's attention to an issue that he knew Bowman had explained but was precluded from introducing. See United States v. Nixon, 418

29

U.S. 683, 709 (1974) ("The ends of criminal justice would be defeated if judgments were to be founded on a partial . . . presentation of the facts.")

Of course, the need to admit Bowman's proffer testimony arose only because the prosecution was permitted to introduce Bowman's immunized statements through Detective Stewart, despite such testimony being explicitly limited by the Debriefing Agreement. That Agreement specifically states that the otherwise immunized statements may be admitted at trial for the *purpose of cross-examination* if the defendant testifies, or *to rebut any evidence offered by or on behalf of Bowman* in connection with the prosecution.

The proffer statements were not used at the third trial for the purpose of cross-examination; Bowman never took the stand. Nor was Bowman's testimony from his first trial introduced by Bowman or someone else on his behalf. The prosecution admitted the prior testimony for its benefit on its case-in-chief. Accordingly, the admission of those statements violated the plain terms of the Debriefing Agreement. See generally United States v. Barrow, 400 F.3d 109, 119 (2d Cir. 2005) (warning district courts "to consider carefully what fact, if any, has actually been implied to the jury before deciding whether proffer statements fairly rebut it"). See also United States v. Brumer, 528 F.3d 157, 158 (2d Cir. 2008) (pre-trial agreements, including proffer agreements, are interpreted according to principles of contract law).

To the extent Detective Stewart's testimony was properly admitted to contradict Bowman's testimony, that contradiction was created by the prosecution's strategic editing. By introducing Bowman's admission that he was an unwitting taxi driver on August 23, 2003, but omitting his testimony explaining why he denied his presence when asked at the proffer session, the prosecution set up a contradiction that opened the door for its successful attack on Bowman's credibility. But Bowman's first trial testimony did not directly contradict the statements he

30

provided at the proffer session. On direct examination at his first trial, Bowman testified that he lied at the proffer session and why, providing uncontroverted proof of his alleged motivation. Indeed, Detective Stewart did not testify at the first trial because Bowman had not offered contradictory testimony; Bowman admitted to lying during the proffer session. Thus, it was only through selectively editing Bowman's earlier trial testimony so that it appeared to contradict his proffer statements that the prosecution was able to call Detective Stewart to impeach Bowman's credibility.

This manipulation of Bowman's former testimony created a false contradiction between Bowman's proffer session statements and his trial testimony, which lay a foundation for impeachment through admission of his otherwise inadmissible statements from his proffer session. Had the court allowed the defense to supplement the testimony, the jury would have learned two critical facts: Bowman had an independent reason to lie at the proffer session, and he had come clean about his lie when he testified at the first trial. Neither fact would have been necessary to introduce had the prosecution not offered Detective Stewart's testimony, and both facts would have rehabilitated Bowman's credibility.

The Court is precluded from concluding that the erroneous admission of Bowman's proffer statements through Detective Stewart's testimony alone is a basis for *habeas* relief in light of the state court's independent and adequate basis for denying that challenge. This evidentiary error, however, cannot be isolated from the trial court's refusal to permit the admission of Bowman's first trial testimony concerning the proffer session.

In sum, I find that there was a state-law evidentiary error in excluding portions of Bowman's first trial testimony concerning the proffer session from his third trial.[6] This error was exacerbated by the additional evidentiary error of allowing Detective Stewart to testify about Bowman's immunized statements despite the plain terms of the Debriefing Agreement, which prohibited such testimony.

### 2.   Error of Constitutional Magnitude

The question now is whether the evidentiary error denied Bowman the constitutional right to a fundamentally fair trial. I conclude that it did.

*Habeas* relief is available to remedy a state court's evidentiary error only "if the omitted evidence creates a reasonable doubt that did not otherwise exist . . . ." Agurs, 427 U.S. at 112. See also Justice, 90 F.3d at 48 (granting *habeas* relief where "the excluded testimony could have raised a reasonable doubt that did not otherwise exist"). In other words, courts examining evidentiary trial errors as the basis for a *habeas* claim must consider "whether the excluded evidence was *material* to the presentation of the defense . . . ." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983); see also Chambers, 410 U.S. at 302 (finding, on direct appeal, that exclusion of hearsay testimony violated a constitutional right in part because the excluded testimony was "critical" to defendant's defense). Whether a trial was rendered constitutionally unfair by error, and therefore, an error of constitutional magnitude, presents a "high hurdle." Perez, 210 F. App'x. at 58.

_____

[6] Precluding the admission of Bowman's proffer session testimony on hearsay grounds not only violated New York's rule of completeness but also was error under the hearsay exception for explanations of admissions by a party. See Chamberlain v. Iba, 181 N.Y. 486, 492 (1905) ("Where declarations or acts of a party are offered in evidence as admissions against himself and calculated to show that his present attitude is inconsistent therewith, it is always competent for him to offer an explanation." See also Prince, Richardson on Evidence, § 8-211 (11th ed. 1995).

A determination of materiality must be made after full consideration of the trial record. See Agurs, 427 U.S. at 112 (the omitted evidence "must be evaluated in the context of the entire record"). To determine whether an evidentiary ruling rendered a trial fundamentally unfair, courts look at factors such as the weight of the evidence as a whole, see, e.g., Grochulski v. Henderson, 637 F.2d 50, 56 (2d Cir. 1980), and whether the excluded evidence was otherwise reliable, see, e.g., Chambers, 410 U.S. at 300-01. "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." Agurs, 427 U.S. at 112-13. This conclusion requires more than that the error *contributed* to the verdict; rather, it requires "a finding that reasonable doubt has been *created* . . . ." Perez, 201 F. App'x at 58 (emphasis supplied).

The case against Bowman was weak. The only witness to implicate Bowman directly in the crime was Jason Rivera, a cooperating co-defendant, who had no prior (or subsequent) relationship with Bowman, a very long criminal history (that included criminal conduct while on probation), and who stood to have a substantial sentence reduced to five years for "truthful testimony" against Bowman. All other evidence against Bowman was circumstantial. Credibility was the critical issue in this case. Thus, to determine whether Bowman knowingly participated in the crime hinged on whether the jury believed Bowman or Rivera. To tip the scales in favor of Rivera, the prosecution argued that Bowman "will lie when he believes he can get away with it," and that he lied even when he was offered the chance to tell the truth at the proffer session. (T3 at 306:18-24.) The prosecutor's arguments show that, by the third trial, the government's case depended on destroying Bowman's credibility. Over defense counsel's objection, the prosecutor

33

referred to the October 16, 2003 proffer session in his opening statement, immediately suggesting that Bowman lacked credibility. The prosecutor's summation makes clear that the government's main theme was that Bowman was a liar:

> So what about this defendant's story? What we do know is that this defendant will lie to protect himself. This defendant walked into the Manhattan District Attorney's office with his lawyer, sat down at a meeting, signed the debriefing agreement, looked everyone in the eye and lied.

(T3 at 1219.) The prosecutor referred to Bowman's lie no fewer than 12 times in summation (as compared to twice and just once, in the first and second trials, respectively).

After two juries were unable to reach a verdict, at the third trial, the prosecution plainly sought to exploit this credibility contest by excluding Bowman's prior testimony explaining why he lied at the proffer session while offering Detective Stewart to testify about that lie and then repeatedly accusing Bowman of not telling the truth even when granted immunity. Bowman's trial counsel made multiple arguments to the trial judge that excluding Bowman's trial testimony affected the tenor of the trial evidence in a fundamental way; that it misled the jury about Detective Stewart's testimony because it omitted Bowman's explanation, which was given under oath, corroborated by documentary evidence, and tested by cross-examination at the first trial.

Bowman's choice was to waive his Fifth Amendment right and take the stand, or allow the false impression that he lied for no good reason despite the grant of immunity. He decided not to testify in his third trial, as was his right. But because the prosecution improperly used Bowman's immunized statements, and the court denied his application to offer prior testimony, Bowman's sole means of getting this crucial information to the jury was to take the stand. See U.S. v. Marin, 669 F.2d 73, 85 n.6 (2d Cir. 1982) (recognizing that the Fifth Amendment may be implicated where the government offers in evidence defendant's inculpatory statements but seeks to omit exculpatory statements) (citing U.S. v. Walker, 652 F.2d 708, 713 (7th Cir. 1981) ("If the

Government is not required to submit all relevant portions of prior testimony which further explain selected parts which the Government has offered, the excluded portions may never be admitted.")) See also Walker, 652 F.2d at 713 (comparing evidentiary errors under the federal rule of completeness to "[f]orcing the defendant to take the stand in order to introduce the omitted exculpatory portions," and recognizing that allowing such errors to lie "may have painted a distorted picture of [defendant's] prior testimony which he was powerless to remedy without taking the stand") (internal citations omitted).

The Court cannot ignore that the first two juries heard the evidence that was excluded here and were unable to reach a verdict; one jury was apparently hung at 11 to one for acquittal. Thus, the omission of this testimony creates a "reasonable doubt" as to Bowman's conviction when measured against the evidence in and the outcomes of the first two trials.[7]

But it is not just the exclusion of the testimony alone that creates a reasonable doubt. The prosecution sought to take advantage of the court's ruling by repeatedly drawing the jury's attention to the absence of an explanation he knew existed. The jury was misled into believing that Bowman lied because he was guilty of the crime for which he was charged, and not for some other reason. These tactics rendered the third trial fundamentally unfair.

In People v. Anderson, 256 A.D.2d 413, 414 (2d Dep't 1998), the Appellate Division found that the trial court erred by allowing the prosecutor to elicit testimony concerning a statement the defendant gave to the police that was inculpatory but denying the defendant's attempts to introduce the remaining exculpatory portion. This violation of the completeness rule was not harmless: "During summations, the prosecutor exploited the ruling and capitalized upon

---

[7] Other than the omission discussed here, the first and second trials were materially the same as the third trial.

it by arguing improperly to the jury that the defendant had not told the police that at the time in question he was [not present]. Because the prosecutor misled the jury by pointing to the absence of evidence that he knew existed, reversal is warranted." Id. See also People v. Martinez, 186 A.D.2d 153, 154 (2d Dep't 1992) (defendant was prejudiced when prosecutor took advantage of correct pretrial ruling barring admission of defendant's hearsay statements of self-defense by suggesting to the jury that defendant's justification claim was an afterthought created only after he heard the prosecution's witnesses at trial); People v. Saintilima, 173 A.D.2d 496, 498 (2d Dep't 1991) (defendant was prejudiced by exclusion of documentary evidence that violated the completeness rule: "Inasmuch as this was a relatively close case requiring the jury to determine which witness, either the complainant or the defendant, was telling the truth and the exculpatory statement at issue tended to corroborate the defendant's version of events, we cannot conclude that the error was harmless.")

In a case that depended on the defendant's knowledge, which could be determined only by the relative credibility of two witnesses, I find that a reasonable juror could have determined that information that rehabilitated Bowman's credibility after impeachment created a reasonable doubt. Given the unusual circumstances of two prior hung juries, both of which heard Bowman's explanation about why he did not tell the truth at first, I find that the exclusion of Bowman's prior trial testimony concerning the proffer session violated New York's completeness doctrine (or, that at a minimum, the rules of evidence were "mechanistically applied," see Chambers, 410 U.S. at 302), and that the effect of this error was so prejudicial that it "denied him a trial in accord with traditional and fundamental standards of due process." Chambers, 410 U.S. at 302. As such, the Appellate Division's affirmance of Bowman's conviction was an unreasonable application of clearly established constitutional law requiring that a defendant receive a fair trial

consistent with the due process rights guaranteed under the Fourteenth Amendment, including the right to present a meaningful defense.

## CONCLUSION

For these reasons, I recommend that Bowman's petition for a writ of *habeas corpus* be GRANTED, that the conviction be vacated, and the case be remanded to the state courts for further proceedings.

*      *      *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections to this Report and to the September 19, 2013 Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Swain. The failure to file these timely objections will result in a waiver of

those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b),

72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

**SO ORDERED.**

_____

SARAH NETBURN
United States Magistrate Judge


DATED:       New York, New York
             April 24, 2014