UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

EDWARD BOWMAN,

        Petitioner,

  -v-                                No. 12CV4153-LTS-SN

STEVEN RACETTE,

        Respondent.

-------------------------------------------------------x

MEMORANDUM ORDER REGARDING SECOND REPORT AND RECOMMENDATION
(ECF DOCKET ENTRY NO. 47)

        Pro se petitioner Edward Bowman ("Petitioner") petitions the Court, pursuant to 28 U.S.C. § 2254, to vacate his 2006 New York State convictions of Conspiracy in the Fourth Degree, Assault in the First Degree and Attempted Robbery in the First and Second Degree.  On September 19, 2013, Magistrate Judge Sarah Netburn issued a Report and Recommendation recommending that the Petition be denied to the extent it is based on seven of Petitioner's eight claims.  Judge Netburn appointed habeas counsel to brief the remaining claim – that the trial court improperly excluded portions of Petitioner's testimony from a prior trial (the "Rule of Completeness Claim") – on Petitioner's behalf.[1]  Judge Netburn subsequently granted counsel's motion to deem the Petition amended to include a claim that testimony concerning statements protected by a proffer agreement was improperly admitted at Petitioner's trial (the "Immunized Statements Claim").

---

[1]     By separate Order, the Court adopts Judge Netburn's September 19, 2013, Report. See Memorandum Order Adopting First Report and Recommendation (ECF Docket Entry No. 30), also filed today.

On April 24, 2014, Judge Netburn issued a second Report and Recommendation (the "Second Report") recommending that the Court find that Petitioner's Immunized Statements claim is procedurally barred, but also recommending that Petitioner be granted relief on the basis of his Rule of Completeness claim. Petitioner filed timely objections to the Second Report. Respondent also filed timely objections to the Second Report and a response to Petitioner's objections. The Court has carefully considered the Second Report, Petitioner's objections, Respondent's objections and response and the underlying record. For the following reasons, the Court adopts the Second Report in part, holds that Petitioner has failed to demonstrate that the state court, in affirming Petitioner's convictions, unreasonably applied established federal law principles as articulated by the Supreme Court, and denies the Petition insofar as Petitioner seeks relief on based on his Rule of Completeness Claim and his Immunized Statements Claim.

## DISCUSSION

The Court adopts the "Background" section of the Second Report (pages 1-10), to which no objection has been made and which accurately summarizes the relevant factual and procedural context of Petitioner's claims. Familiarity with the Second Report is presumed and only the facts most relevant to the objections are discussed here. Petitioner was tried three times on charges arising from an attempted robbery. He testified at the first trial, acknowledging that he had driven the taxi in which his co-defendants had traveled to and from the robbery scene, but denied that he was a knowing participant in the crimes. He also admitted that he had lied during a proffer session with the authorities, claiming at the proffer session that he had not driven at all that day, and then admitting that he had driven that day with a suspended license but denying travel in connection with the crimes. In his trial testimony, he explained that he had lied

because, as a taxi service operator, he had feared that his business would be shut down if the authorities knew that he had been driving with a suspended license.  The first trial ended with a hung jury.  These portions of his testimony from the first trial were read at the second trial, which also ended with a hung jury.  At the third trial, the prosecution was permitted to introduce the portion of his testimony in which he admitted driving the taxi, but Petitioner's argument for admitting the portions of Petitioner's testimony regarding the lies at the proffer session and the reason for the lies was rejected.  The prosecution was, nonetheless, permitted to present the testimony of a detective who had been present at the proffer session, who testified to the lies.  Furthermore, the prosecutor's opening and closing arguments focused on the lies.  Petitioner was convicted on May 19, 2006, of Conspiracy in the Fourth Degree, Assault in the First Degree, and Attempted Robbery in the First and Second Degree.  He was sentenced to an aggregate prison term of twenty years to life.  Petitioner's judgment of conviction was affirmed by the New York State Supreme Court Appellate Division, First Department.  His leave application to the New York State Court of Appeals was denied, and his subsequent petition for a writ of certiorari from the United States Supreme Court was also denied.

Standard of Review

When reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.S. § 636(b)(1)(C) (LexisNexis 2012).  When a party makes a specific objection to the report, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997) (internal quotation marks and citation

omitted). However, if the "party's objections . . . are 'conclusory or general,'" the Court will review the report solely for clear error. Williams v. City of New York, No. 12CV8518, 2014 WL 1383661, at *5 (S.D.N.Y. Mar. 26, 2014) (quoting Walker v. Vaughan, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)).

Petitioner objects to Judge Netburn's recommended finding that his Immunized Statements Claim is procedurally barred because the state court rejected it on an independent and adequate state law ground (see Second Report at pp. 11-20) and argues that the trial court violated Petitioner's right to a fair trial by permitting the introduction of his immunized statements, which were made during a proffer session and were admitted in violation of the provisions of the Debriefing Agreement pursuant to which Petitioner had proffered. Respondent objects to the Second Report's recommendation that relief be granted on the basis of Petitioner's Rule of Completeness Claim. (See Second Report at pp. 36-37.)

Immunized Statements Claim

Petitioner argues that his Immunized Statements Claim is not procedurally barred and that, even if it is procedurally barred, he is entitled to relief because he has demonstrated the requisite cause for the procedural default and prejudice arising from it, or actual innocence. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (under an exception to the procedural default rule, a federal court can consider the merits of a habeas claim if the petitioner can "demonstrate cause for his state-court default of any federal claim and prejudice therefrom"). Judge Netburn found that the claim was procedurally barred because the Appellate Division, in affirming the convictions, specifically noted that it was relying on New York's contemporaneous objection rule to bar consideration of Petitioner's claim concerning the use of his immunized statements.

See People v. Bowman, 77 A.D.3d 559, 559 (1st Dep't 2010) ("[b]y failing to object, or by objecting on different grounds from those raised on appeal, defendant failed to preserve his current objections to . . . statements from his proffer session . . ."). Petitioner argues here that trial counsel's failure to raise the requisite contemporaneous objection rendered counsel's performance ineffective within the meaning of the Sixth Amendment to the Constitution, and that his conviction on a trial record that included the immunized statements but excluded his explanation for the lies demonstrates prejudice sufficient to warrant consideration of the merits of his Immunized Statements Claim.  (See Petitioner's Objection ("Pet. Obj.") at 3.)  This objection is entirely repetitive of the argument Petitioner advanced before Judge Netburn.  (See, e.g., Pet. Obj. at 2-3; Petitioner's Supplemental Memorandum ("Pet. Supp. Memo") at 30-33.) The Court therefore reviews the Report's recommended finding on this issue under the clear error standard.  Judge Netburn carefully considered this argument and determined that, given his trial counsel's overall effective representation, Petitioner had not established that his counsel's error in failing to preserve his Immunized Statements Claim resulted in a violation of his Sixth Amendment right to effective assistance of counsel.  Judge Netburn's recommended finding that the Immunized Statements Claim was procedurally barred is thorough and persuasive and free of clear error; the Court adopts her recommended conclusion on this issue.  (See Second Report at pp. 18-19.)

       The other exception to procedural default, which Petitioner also raised previously and argues again here, is for "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, [and in such cases,] a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Murray v. Carrier, 477 U.S. 478, 496 (1986).  In rejecting Petitioner's actual innocence

argument, Judge Netburn relies on language from the Supreme Court's opinion in <u>House v. Bell</u>, quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995), in support of the proposition that Petitioner must demonstrate that, "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt . . . [based upon] <u>new</u> <u>reliable</u> <u>evidence</u> . . . that was not presented at trial" to establish actual innocence. (See Second Report at p. 20, quoting <u>House</u>, 547 U.S. 518, 537, emphasis in Report.) Petitioner objected to Judge Netburn's interpretation of these cases and, upon <u>de</u> <u>novo</u> review, the Court agrees that the reading of the cases articulated in the Report is overly narrow.

In <u>Schlup</u>, the Supreme Court made clear that, in analyzing an actual innocence claim,

> the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial . . . The habeas court must make its determination concerning the petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.)'

<u>Schlup</u>, 513 U.S. at 328 (quoting Henry Friendly, <u>Is Innocence Irrelevant? Collateral Attack on Criminal Judgments</u>, 38 U. Chi. L. Rev. 142, 160 (1970)). Applying this standard in <u>House</u>, the Court noted that "<u>Schlup</u> makes plain that the habeas court must consider all the evidence, old and new, incriminating and exculpatory . . . Based on this total record, the court must make a probabilistic determination about what reasonable, properly instructed jurors would do." <u>House</u>, 547 U.S. at 537 (internal quotation marks and citations omitted).

The Second Circuit has in turn recognized that courts must consider an holistic picture of the evidence in reviewing gateway claims of actual innocence. <u>See</u>, <u>e.g.</u>, <u>Rivas v. Fischer</u>, 687 F.3d 514, 542 (2d Cir. 2012). Furthermore, the definition of "new" evidence under

the Schlup standard appears to be an open question in this Circuit.  See, e.g., Tuitt v. Martuscello, No. 12CV1003-CS-PED, 2013 WL 5508385, at N.16 (S.D.N.Y. Oct. 3, 2013) (Davison, M.J., report and recommendation adopted by Seibel, J.) (noting that Second Circuit has not decided issue of what constitutes "new" evidence, but appears to favor approach that such evidence need not be limited to evidence unavailable at trial so long as it was not considered by the original finder of fact).  In light of this analysis, the Court holds that the prior testimony of Petitioner, which was excluded at his third trial, may be considered relevant "new" evidence for the purposes of an actual innocence inquiry.  The Court therefore declines to adopt Judge Netburn's Second Report insofar as it finds Petitioner's actual innocence claim procedurally deficient.

The Court nonetheless rejects Petitioner's actual innocence claim, as it cannot be said that "it is more likely than not that no reasonable juror would have convicted him in the light of" the complete record.  Schlup, 513 U.S. at 327.  Even if the trial court erred in admitting Petitioner's immunized statements while simultaneously barring the prior testimony that might have defused them, there was ample evidence presented at trial that the jury could have found credible and relied upon in support of a guilty verdict.  (See generally Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, Docket Entry No. 15, at pp. 4-30.)  Furthermore, as Judge Netburn recognized in her Report, in each of Petitioner's previous trials – at which the admitted immunized statements were presumably balanced out by Petitioner's explanatory testimony – the jury hung and did not acquit, indicating that at least one juror at each trial would have found Petitioner's guilt beyond a reasonable doubt based on the totality of the evidence.  The Court therefore denies the Petition insofar as it relies

on the Immunized Statements Claim, which is procedurally barred.[2]

Rule of Completeness Claim

The Second Report recommends that the Court sustain Petitioner's Rule of Completeness Claim, finding that the claim is not procedurally barred, that the state courts erred in their application of New York's Rule of Completeness, and that the Appellate Division's affirmance of the convictions constituted an unreasonable application of clearly established federal law. Respondent argues, inter alia, that this claim is procedurally barred; that Judge Netburn erred in determining the clearly established federal law pursuant to 28 U.S.C. § 2254(d)(1); and that Judge Netburn erroneously recommended finding that the evidentiary ruling violated New York's completeness doctrine. The Court has reviewed de novo the material aspects of the Second Report's rule of completeness analysis to which Respondent objects.

The Appellate Division held that, "[b]y failing to object, or by objecting on different grounds from those raised on appeal, defendant failed to preserve his current objections to the admission of his testimony from a prior trial, statements from his proffer session, and the victim's additional testimony after being recalled to the stand." Bowman, 77 A.D.3d at 559. The Appellate Division concluded that defense counsel did not specifically and timely object to the trial court's ruling on the admission of his testimony from a prior trial in violation of the well-established New York contemporaneous objection rule. In the same sentence, the Appellate Division also concluded that defense counsel had not preserved his objection to the admission of

---

[2] Respondent also argues that Judge Netburn erred in reviewing the Immunized Statements Claim on the merits and in failing to treat with deference the Appellate Division's finding that the Immunized Statements Claim was procedurally barred. This objection, to which the Court has accorded de novo review, is sustained.

Petitioner's immunized statements from the proffer session.  While the Second Report recommended finding that the Immunized Statements Claim was procedurally barred based on the Appellate Division's reliance on New York's contemporaneous objection rule, it recommended finding that the Rule of Completeness Claim was not procedurally barred.  The Second Report's reasoning for this recommendation rests on the Appellate Division's statement that "[it had] considered and rejected defendant's pro se claims."  Bowman, 77 A.D.3d at 559.  Petitioner's pro se brief to the Appellate Division specifically referred to the denial of the defense application to introduce the "exculpatory" portion of the Petitioner's statement.  (See Docket Entry No. 14-2 at, e.g., 5.)  Because Petitioner only mentioned his Rule of Completeness claim in his pro se papers, the Second Report construes the Appellate Division's procedural ruling to refer only to the arguments raised through counsel.

> Objecting to this analysis, Respondent argues that the Appellate Division brief of Petitioner's counsel made no arguments concerning Petitioner's prior testimony, such that the "testimony" reference in its procedural ruling, can only have been to Petitioner's pro se argument, which is thus barred by the Appellate Division's finding of procedural default as to "the admission of [Petitioner's] testimony from a prior trial."  (See Docket Entry No. 60, Resp. Obj. at 12; Bowman, 77 A.D.3d at 559.)  Respondent's objection misrepresents the content of Petitioner's counsel's Appellate Division brief.  Although that brief is not a model of clarity and the main focus of the argument advanced was certainly the admission of the immunized testimony, the brief includes three references to the admission of Petitioner's trial testimony, including an argument that the testimony was "taken out of context in order to undermine Mr. Bowman's credibility by introducing" the police officer's testimony concerning the proffer session statements.  (See docket entry 14-1 at 1, 42.)  The Appellate Division's reference to an

objection to "the admission of his testimony from a prior trial" is thus logically and properly read to refer solely to the counseled argument concerning the admission (not the exclusion) of such testimony, and its merits rejection of Petitioner's pro se arguments is logically and properly read to refer to the entirety of the pro se submission, including the Rule of Completeness argument. Accordingly, Respondent's Objection is overruled and the Court adopts the Second Reports's recommended finding that the Rule of Completeness Claim is not procedurally barred. (See Second Report at p. 13.)

Merits of Completeness Claim

Respondent further argues that the Second Report errs in concluding that the state court applied clearly established federal law unreasonably in rejecting the Rule of Completeness Claim. The Second Report concludes that, in refusing to permit the introduction of Petitioner's prior testimony regarding his reason for lying at the proffer session, the state court misapplied New York's Rule of Completeness[3] and excluded evidence that would have created a reasonable doubt that would not otherwise have existed, thus rendering Petitioner's third trial fundamentally unfair and violating the due process guarantee of the Fourteenth Amendment. The Second Report recommends that the Court find that "the Appellate Division's affirmance of Bowman's conviction was an unreasonable application of clearly established constitutional law requiring that a defendant receive a fair trial consistent with the due process rights guaranteed under the

---

[3] In light of the Court's conclusion, infra, that Petitioner has failed to demonstrate that the trial court's application of the Rule of Completeness violated his rights under the due process clause of the Constitution, the Court declines to address Respondent's argument concerning the propriety of the Second Report's analysis of the evidentiary ruling under New York state law.

Fourteenth Amendment, including the right to present a meaningful defense."  (Second Report at pp. 36-37.)

The Court has reviewed the Rule of Completeness Claim de novo and Respondent's objection to the recommended conclusion is sustained.  As the Second Report recognizes,

> The Antiterrorism and Effective Death Penalty Act ('AEDPA') authorizes a district court to grant *habeas* relief based on an issue adjudicated on the merits in state court only if the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;' or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

(Second Report at p. 21.)  Petitioner does not contend that the state court's ruling was contrary to clearly established federal law or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the proceeding.  The Court's attention thus turns to the "unreasonable application" prong of the review standard.  "'[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent.'"  (Id., quoting Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001).)

AEDPA constrains habeas review to consistency with federal law "as determined by the Supreme Court of the United States."  "That statutory phrase refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000).  An appellate court's interpretation of a Supreme Court case is not clearly established federal law.  See, e.g., Renico v. Lett, 559 U.S.

766, 779 (2010); Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) ("[t]he Court of Appeals' contrary conclusion rested in part on the mistaken belief that circuit precedent may be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced").  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.

Here, the Second Report properly rejected as too narrow the Respondent's argument that Petitioner could not show an unreasonable application because the Supreme Court has never held specifically that the exclusion of testimony in violation of the completeness doctrine violated a criminal defendant's due process rights.  The Second Report errs in the opposite direction, however, extrapolating a broad principle from Supreme Court precedent as construed in circuit court decisions and applying that principle to brand the state proceedings fundamentally unfair.  This Court concludes that the state court's application of the relevant federal law was objectively reasonable.

To discern the relevant clearly established federal law principles, the Second Report looks primarily to circuit court applications of the Supreme Court's decisions in Chambers v. Mississippi, 410 U.S. 284 (1973) and United States v. Agurs, 427 U.S. 97 (1976).  The Second Report cites the Second Circuit's decision in Evans v. Fischer, 712 F.3d 125 (2d Cir. 2013), for the proposition that Chambers "stand[s] for the legal principle 'that in some cases the exclusion of hearsay proffered by a defendant in a correct application of state rules of evidence

can violate the guarantee of due process by denying a defendant his right to present witnesses in his own defense.'" (Second Report at p. 24, quoting <u>Evans</u> at 134 (emphasis in original).)  It bears noting that the <u>Evans</u> Court proffered this formulation of the <u>Chambers</u> holding by way of rejecting the district court's reading of <u>Chambers</u> as establishing the principle that "erroneous admission of hearsay can defeat a defendant's fundamental right to present his own defense" (<u>Evans</u>, 712 F.3d at 134) and, reversing the district court's grant of habeas, cautioned against overly broad readings of clearly established federal law:

> [T]o the extent any of the cases on which the district court relied can be said to provide a principle the Appellate Division unreasonably applied, such a principle would be broad in nature.  '[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 . . . (2004).

<u>Evans</u>, 712 F.3d at 135 (parallel citations omitted).

The Second Report goes on to reference Second Circuit decisions in which <u>Chambers</u> was cited as recognizing "the right under certain circumstances, to place before the jury secondary forms of evidence, such as hearsay or, as here, prior testimony" (Second Report at p. 22, quoting <u>Rosario v. Kuhlman</u>, 839 F.2d 918, 924) (2d Cir 1988)) and establishing that "the opportunity to present a defense is one of the constitutional requirements of a fair trial" (Second Report at p. 25, quoting <u>Jones v. Stinson</u>, 229 F.3d 112, 120 (2d Cir. 2000)).  In <u>Chambers</u>, the hearsay rule was applied to prevent a defendant from presenting third-party evidence that a person other than the defendant (one McDonald) had confessed to the charged crime on multiple occasions, and a state rule against impeaching a party's own witness was used to preclude him from cross-examining McDonald, whom he had called as a witness when the state declined to do so, about McDonald's subsequent repudiation of the confession and an alibi

advanced for the crucial time period. There was no alternative source for the information and the defendant was "thus effectively prevented from exploring the circumstances of McDonald's three prior oral confessions and from challenging the renunciation of the [McDonald's] written confession." Chambers, 410 U.S. at 297. The hearsay statements regarding the oral confessions had significant indicia of reliability and McDonald was actually present in court and available for cross-examination, had such been permitted. Id. at 300-301. Recognizing the fundamental right to present witnesses in one's own defense, the Court held that "[i]n these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice," and concluded "that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process." Id. at 302. The Court cautioned, however, that it was not establishing "new principles of constitutional law," and that its holding did not "signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures." Id. at 302-303. "Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." Id. at 303 (emphasis supplied).

In Rosario, the Second Circuit applied Chambers and United States v. Agurs, 427 U.S. 97 (1976),[4] in concluding that the exclusion of prior testimony of an unavailable witness to

---

[4] In Agurs, the Supreme Court held, in the context of a Brady v. Maryland-based appeal from a conviction, that the materiality of withheld evidence is determined by reference to the question of reasonable doubt, stating that "[i]t necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." Agurs, 427 U.S. at 112.

impeach testimony that was "the only evidence linking the defendant to the crime" violated the defendant's right to a fair trial because "the testimony, if received in evidence, could have created a reasonable doubt that did not otherwise exist." Rosario, 839 F.2d at 927.  In Jones, the defendant, who was being prosecuted for selling narcotics, claimed that he had only been intending to sell a non-narcotic substance; the trial court sustained an objection to his proffer of testimony that he had been arrested on previous occasions and released when the substance was found to be fake. The Second Circuit reversed the grant of habeas relief because, viewing the record as a whole, it could not conclude that the denial of the defendant's proffer of his own testimony as to the prior arrests "would so certainly have created new ground for reasonable doubt that the appellate division's decision was objectively unreasonable," given that the defendant had been permitted to testify that he had not intended to sell narcotics and that he had sold fake substances in the past.  The excluded testimony was thus potentially of a cumulative or bolstering nature.  See Jones, 229 F.3d at 119-121.

        The Court, having carefully reviewed the Second Report's analysis of Petitioner's completeness claim, concludes that, to the extent Chambers clearly establishes a principle that is applicable in this case, the Second Report's interpretation of the principle is too broad to support a determination that Appellate Division's application of that principle was objectively unreasonable. Chambers, which by its own terms established no new principle of law, recognized the general proposition that the mechanistic application of hearsay rules *can*, in some circumstances, result in the denial of the fundamental right to a fair trial, and held that the fundamental right had been violated under the facts presented in that case.  While the unreasonable application prong of the AEDPA standard is, as the Supreme Court explained in Williams, different from the "contrary to" and factual determination prongs, it is not a license to

ignore the context in which the Supreme Court has articulated the principle in question.

Here, the key difference is the practical availability to the defendant of the information necessary to press his defense or to raise reasonable doubt.  In Chambers (and in Rosario for that matter), the excluded evidence was the only means by which the defendant could have put before the jury the particular defense theory that was derailed by the trial court's evidentiary rulings.  Here, while the trial court's hearsay ruling precluded Petitioner from advancing his rationale for lying through the presentation of his prior sworn testimony, the information that he sought to put before the jury was not unavailable.  Petitioner could have taken the stand, as he had done in the first trial.  The Fifth Amendment privilege against self-incrimination is fundamental but it can be waived, and neither Petitioner nor the Magistrate Judge has identified any clearly established Supreme Court precedent holding that it is a denial of due process to put a defendant in the position of having to choose between foregoing a particular line of defense and waiving his right to remain silent.  The Second Report's conclusion that the trial court's ruling resulted in the unconstitutional exclusion of a basis for reasonable doubt is unpersuasive for the same reason.

Accordingly, the Court concludes that Petitioner has failed to demonstrate that the state court's rejection of his Rule of Completeness application to introduce his prior testimony regarding his reason for lying about his involvement with his co-defendants denied Petitioner his fundamental due process right to a fair trial.  The ruling did not deny him the right to present a defense, nor did it preclude him from proffering available evidence that could have provided grounds for reasonable doubt.  The Court therefore declines to adopt the Second Report insofar as it recommends a finding that Petitioner's constitutional rights have been violated, and the Petition is denied.

CONCLUSION

For the reasons stated above, the Court adopts the Second Report in part and declines to adopt the remainder of its recommended findings and conclusions. The Petition is hereby denied.

The Clerk of Court is requested to enter judgment denying the Petition, in accordance with this Memorandum Order and the Court's Memorandum Order Adopting First Report and Recommendation, also filed today.

A certificate of appealability will issue with respect to the Rule of Completeness Claim addressed in the Second Report and this Memorandum Order.

Because Petitioner has not otherwise made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue with respect to the Immunized Statements Claim and the claims addressed in the First Report and Recommendation. 28 U.S.C. § 2253(c)(2); see also United States v. Perez, 139 F.3d 255, 259-60 (2d Cir. 1997).

SO ORDERED.

Dated: New York, New York
April 20, 2015

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge